### Jerry SCHWARTZ, Plaintiff,

### v.

### William A. HALTER,[1] Commissioner of Social Security, Defendant.

### Civil Action No. 00–CV–648.

United States District Court,
E.D. Pennsylvania.

March 8, 2001.

---

**1.** William A. Halter became the Acting Commissioner of Social Security, effective January 20, 2001, to succeed Kenneth S. Apfel. Under Fed.R.Civ.P. 25(d)(1) and 42 U.S.C. § 405(g), William A. Halter is automatically substituted as the defendant in this action.

Sharon Gornstein, Leventhal & Sutton, Langhorne, PA, for plaintiff.

Joyce M. Gordon, Social Security Administration, Assistant Regional Counsel, Philadelphia, PA, William B. Reeser, Social Security Administration, Office Of General Counsel, Philadelphia, PA, for defendant.

## OPINION AND ORDER

Van Antwerpen, District Judge.

Plaintiff, Jerry Schwartz, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"), Defendant William A. Halter (the "Commissioner"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"), 42 U.S.C. §§ 401–403, 1381–1383. Each party has moved for summary judgment. For the reasons set forth below, the Commissioner's Motion for Summary Judgment will be denied, and Plaintiff's Motion for Summary Judgment will be granted.

### I. Procedural History

Schwartz filed an application for disability insurance benefits on February 7, 1996, alleging a disability beginning on January 4, 1996, due to leg and spine impairments sustained in a hunting accident that occurred when he was fourteen years old. (Tr. 64–67). This application was denied, and no further action was taken. Schwartz next filed applications for both DIB and SSI on August 29, 1996. (Tr. 115–17, 223–25.) These applications were denied initially and upon reconsideration. (Tr. 97–99, 102–04, 226–33.) Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). Counsel was appointed in February 1997. The hearing was held on February 20, 1998, and the ALJ received testimony

from Schwartz and a vocational expert. (Tr. 37–63.)

In a decision dated June 25, 1998, the ALJ denied Schwartz's applications for benefits. (Tr. 17–27.) Plaintiff then filed a timely request for review by the Appeals Council, which was denied, making the ALJ's decision the final decision of the Commissioner. (Tr. 6–7.) Having exhausted his administrative remedies, Schwartz sought review of the Commissioner's final decision in this Court, filing a complaint on February 9, 2000. He filed a Motion for Summary Judgment on June 23, 2000. The Commissioner filed a Motion for Summary Judgment on August 18, 2000, to which Plaintiff filed a response on September 20, 2000. We referred the matter to Chief United States Magistrate Judge James R. Melinson on September 25, 2000. Also on September 25, 2000, pursuant to another application for benefits, the Plaintiff was found eligible for disability benefits as of July 30, 1998, approximately one month after the ALJ's decision in the instant case, and therefore we are limited to deciding whether Plaintiff was disabled during the period of January 6, 1996 through July 29, 1998.

On December 29, 2000, Chief Magistrate Judge Melinson issued a Report and Recommendation recommending that the Court grant the Commissioner's Motion for Summary Judgment and deny the Plaintiff's Motion for Summary Judgment. On January 16, 2000, Plaintiff filed objections to the Report and Recommendation.

## II. Factual History

Schwartz was born on August 4, 1950, and was forty-seven years old at the time of the administrative hearing.[2] (Tr. 64, 115.) His education terminated after the completion of the sixth grade. (Tr. 40.) He has a past relevant work history as a laborer in a scrap yard and recycling center. At this job, he operated a forklift and two types of cranes, and used a torch to cut through metal.[3] (Tr. 48.) In January 1996, the month before he first applied for DIB, Schwartz was laid off from his job after a new company acquired the business; he then began to collect twenty-six weeks of unemployment benefits. (Tr. 41–42.) He is married and lives with his wife and daughter. (Tr. 40.) His current source of income is from public assistance.

When Schwartz was fourteen years old he was injured in a hunting accident in which he accidentally discharged a shotgun into his left thigh. (Tr. 142.) He was admitted to Quakertown Hospital for treatment of and recovery from these injuries for several months. (Tr. 142–46.) When he returned to school two years after the accident, he was so far behind in his studies that his mother withdrew him, and he never completed his education. (Tr. 40, 184–189.) The shotgun injury resulted in a two-inch shortening of his left leg, for which he uses a one and three-quarter inch lift in his shoe to compensate for the discrepancy. The residual pain in his back and left leg caused him to be absent from work approximately one day each week during the last year of his employment. (Tr. 50.) Schwartz speculates that his absenteeism may have contributed to his being laid off from his job. (Tr. 47.)

On March 8, 1996, Mark Mishkan, M.D., performed a medical evaluation of

---

**2.** Under 20 C.F.R. §§ 404.1563(b), 416.963(b), a person under age 50 is classified as a "younger person," which recognizes that such a person's age will generally not seriously affect his ability to adapt to a new work situation.

**3.** At the administrative hearing, a vocational expert testified that this work ranges from unskilled to semi-skilled, and from light to very heavy in exertion. (Tr. 55.)

Schwartz at the request of the Commissioner. (Tr. 80–84.) Dr. Mishkan reported that Schwartz's left leg was shorter than his right, and that he walked with a chronic limp that had caused progressive pain in his leg and lower back. Dr. Mishkan indicated that Schwartz's only medications were Aleve, Tylenol, and Doan's back pills. He also noted a chronic left foot drop and slight to minimal left thigh atrophy. (Tr. 82.) Motor strength in Schwartz's upper and lower extremities was normal except for the left foot. He diagnosed chronic low back pain without evidence of radiculopathy, and a status post gun shot wound to the distal left femur. (Tr. 82.) Dr. Mishkan opined that this pain may be due to Schwartz's chronic limp, degenerative disc disease, or arthritis. (Tr. 82.)

Dr. Mishkan also completed a Medical Source Statement of Ability To Perform Work Related Physical Activities in which he opined that Schwartz could stand/walk for less than two hours, had to periodically alternate sitting and standing at one-hour intervals, but noted no other limitations on sitting, and occasionally could lift or carry fifty pounds. (Tr. 85.) He also opined that Schwartz could occasionally climb, stoop, kneel, crouch, and crawl, but that he had no environmental restrictions. (Tr. 86.)

On March 13, 1996, Sharon Wander, M.D., an agency reviewing physician, completed a residual physical functional capacity assessment form. (Tr. 87–94.) Dr. Wander noted that Schwartz's subjective complaints were not substantiated by the objective findings. (Tr. 93.) She assessed Schwartz's ability to lift/carry at occasionally twenty pounds and frequently ten pounds, his ability to stand/walk at about six hours in an eight-hour day, and his ability to sit at about six hours in an eight-hour day. Dr. Wander also reported that Schwartz had lower left foot limitations because of his left foot drop. She also noted that Schwartz can frequently stoop, kneel, crouch, and crawl, and occasionally balance and climb. (Tr. 89.)

Deborah Ramanathan, M.D., completed a Pennsylvania Department of Public Welfare Employability Assessment Form on August 15, 1996. (Tr. 147–48.) Dr. Ramanathan indicated that Schwartz was involved in an accident in 1965 and that he was permanently disabled. She indicated that her assessment was based on a physical examination, but also noted that the only time that Schwartz was seen in her office was on November 1992 for pharyngitis. (Tr. 148.)

In September 1996, Fred Myers, M.D., an agency reviewing physician completed a Residual Functional Capacity Assessment. (Tr. 151.) Dr. Myers opined that Schwartz could occasionally lift/carry twenty-five pounds, stand/walk about six hours in an eight-hour day, sit for about six hours in an eight-hour day, and that his ability to push and pull was unlimited. (Tr. 152.)

In September 1996, Schwartz began treatment with Erin M. Fly, D.O. (Tr. 161–68.) Schwartz told Dr. Fly that he was seeking disability. (Tr. 168.) Upon an initial evaluation, Dr. Fly reported that Schwartz had a strong family history of cardiac disease, that he had episodes of dyspnea on exertion, hypertension, a previous history of left leg gunshot wound, chronic lumbar and cervical spine region pain, forced expiratory wheezes, and tobacco use. She recommended a stress test, further lab work, an orthopaedic evaluation, and strongly recommended that Schwartz stop smoking. An EKG was normal. (Tr. 168.) Dr. Fly also referred Schwartz to Dr. Strzelecki, a podiatrist, to be fitted for a special shoe, which Schwartz reported helped his pain somewhat. (Tr. 166.) Dr. Fly noted that Schwartz was "applying for permanent disability as he is

unable to do the heavy labor positions that he had once before." (Tr. 166.) During her more than year-long treatment of Schwartz, Dr. Fly prescribed analgesics and non-steroidal anti-inflammatory medications, including Daypro, Naproxen, and Ultram. (Tr. 161–166, 247, 249.) She also recommended a physical therapy program that was delayed by the physical therapist until Schwartz could afford a higher shoe lift. (Tr. 163, 166.) Beginning on October 28, 1996, Dr. Fly periodically completed Pennsylvania Department of Public Welfare Employability Re Assessment forms indicating that Schwartz was temporarily disabled, covering the remainder of 1996 and all of 1997. (Tr. 198–209.)

In March 1997, Schwartz was examined by William. E. Gusa, Jr., M.D., upon the request of Dr. Fly, to evaluate Schwartz's chronic low back pain. (Tr. 211.) Dr. Gusa's examination revealed an obese gentleman in no acute distress, with an abnormal gait secondary to a short leg. He noted that Schwartz had a trigger point in his right trapezius, but no trigger points in his lower back or buttock. Dr. Gusa opined that Schwartz's pain problems were related to his leg length discrepancy, which strained his back muscle, and that once the discrepancy was resolved either by surgery or a new lift in his shoe, it was possible that his pain problems would resolve without intervention.

A physician whose signature is not legible completed a Physical Residual Functional Capacity Assessment form on November 5, 1997. (Tr. 172–78.) This physician estimated that Schwartz could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, lift fifty pounds from a seated position, stand/walk for at least two hours due to his chronic limp, sit for about six hours in an eight-hour day, occasionally balance, stoop, and climb stairs, but never kneel crouch, crawl, or climb a ladder. The physician also indicated that "there is a serious credibility problem in this case in terms of the impact on function due to symptoms." (Tr. 177.) As support for this contention, he cited, inter alia, that Schwartz first saw a physician for his impairments one month after his first denial of benefits letter.

In January 1997, Dane K. Wukich, M.D., performed a consultative evaluation of Schwartz at the request of Dr. Fly. (Tr. 194–95.) Dr. Wukich indicated that Schwartz had a five centimeter discrepancy of his lower left extremity due to a gun shot wound. He also indicated that Schwartz ambulates with a short leg gait and a foot drop gait, and that his knee demonstrated some patellofemoral crepitus. Dr. Wukich discussed the possibility of surgery with Schwartz, i.e., arthroscopy of the left knee and surgery to either shorten one leg or lengthen the other.

In February 1998, an MRI of Schwartz's lumbar spine was performed, which revealed a mild neural foraminal stenosis at the L4–5 on the left, and degenerative disc disease at L5 S1, manifested by disc desiccation. However, there was no evidence of a herniated nucleus puplosus or spinal stenosis. (Tr. 221.)

Dr. Fly, in a Residual Functional Capacity Questionnaire she completed on February 19, 1998, diagnosed Schwartz as having back pain, muscular spasms, left leg shortening, obesity, and hypertension. (Tr. 216.) Because of these impairments, Dr. Fly opined that Schwartz could stand less than two hours and sit about four hours in an eight hour day; required a job in which he could shift at will from standing, walking, or sitting; would need to take unscheduled breaks; could frequently (between $\frac{1}{3}$ and $\frac{2}{3}$ of an eight-hour day) lift less than ten pounds, occasionally (less than $\frac{1}{3}$ of an eight-hour day) lift ten, and never lift twenty or fifty pounds; could not bend or twist at the waist during work; and would

be absent from work as a result of his impairments more than three times a month. (Tr. 218–19.)

Schwartz submitted additional evidence to the Appeals Council to support his claim. On a Employability Re–Assessment Form from the Pennsylvania Department of Public Welfare dated July 28, 1998, asking her to assess Schwartz's ability to work, Dr. Fly checked off that Schwartz was permanently disabled due to lumbar pain and left leg length discrepancy. She also checked off that her assessment was based on a physical examination, review of the medical records, and clinical history. (Tr. 245–46.)

Schwartz also submitted to the Appeals Council a second orthopedic evaluation performed on September 9, 1999, by Dr. Wukich at the request of Dr. Fly. (Tr. 247–48.) Dr. Wukich noted that Schwartz ambulated with a cane, had marked atrophy of the thigh and calf, had an effusion of his left knee which Dr. Wukich aspirated, had a range of motion in the left knee of zero to ninety degrees, and walked with an obvious external rotation deformity of the left lower extremity. Dr. Wukich diagnosed a torn medial meniscus or posttraumatic arthritis of the medial compartment. He also noted that the x-rays revealed a "rather tremendous amount of buckshot still present in his left leg." (Tr. 248.) A month later, Dr. Wukich performed an arthroscopic partial medial meniscectomy of Schwartz's left knee. (Tr. 250–52.) His post-operative diagnosis was severe degenerative joint disease with marked synovitis but no meniscal tears. Significant arthritis was also present. (Tr. 253.)

At the hearing, Schwartz testified that he shares all of the household chores with his wife and daughter, including the cleaning, the laundry, and the food shopping. (Tr. 54.) However, there are times when he is not able to complete the food shopping with his family and must return to his car to await their return. He also does not sleep well at night because the pain in his back makes it impossible to get comfortable. (Tr. 49.) He lies down during the day to rest for at least an hour. (Tr. 50.)

Schwartz feels that he could not return to his previous employment because of his pain. (Tr. 52.) He described the pain in his lower back as resembling being stuck with a needle. His ankle feels like it is always sprained, his knee "pops out" once in a while, he gets cramps in his calf and thigh, and occasionally gets cramps in his hands. (Tr. 51–52.) Every few days, Schwartz gets a pain in his neck that lasts for an hour until he takes over-the-counter pain medication for relief.

Schwartz estimated that he can stand comfortably for five to ten minutes, can walk for half a block before he must rest, and can sit fifteen to twenty minutes comfortably before he needs to stretch. (Tr. 49.) He guessed that he could probably lift twenty-five pounds or more, but never lifts that much. (Tr. 53.)

A vocational expert testified that a significant number of jobs exist in the national economy that Schwartz could perform given his limitations, as presented in the ALJ's hypothetical.[4] These jobs include

---

4. The ALJ asked the vocational expert to consider someone of Schwartz's age with a sixth grade education, not functionally illiterate, but a marginal education based on the school record in evidence. The vocational expert was further asked to assume Schwartz's past relevant work experience and a person who could not regularly or repetitively work over- head with the right non-dominant arm. Additionally, walking and standing would be limited to less than four hours in an eight-hour day, but at least two hours total. Sitting would be limited to six hours in an eight-hour day with customary rest interruptions. The person could not climb or work at heights, and would not work at a job requiring balanc-

assembler, inspector, packer, sorter, surveillance monitor, and general laborer. (Tr. 57–59.) The vocational expert testified that if Schwartz's testimony were fully credited, however, he would not be able to perform any work. (Tr. 60–61.)

## III. Standards of Review

### A. The Commissioner's Decision

■ Judicial review of a social security case is based upon the pleadings and the transcript of the record. 42 U.S.C. § 405(g) (2000 Cum. Annual Pocket Part). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *Id.* (articulating the proper role for this Court). *See Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir.1999) (noting that the circuit court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence); *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999); *Frazier v. Apfel,* No. Civ. A. 99–CV–715, 2000 WL 288246, at *1–2 (E.D.Pa. March 7, 2000). "This Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer,* 186 F.3d at 427. "Substantial evidence does not mean a large or considerable amount of evidence but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir.1999) (citations omitted). We cannot conduct de novo review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D.Pa.1998). To determine whether a finding is supported by substantial evidence, however, we must review the record as a whole. *See* 5 U.S.C. § 706; *Schaudeck,* 181 F.3d at 431.

The Third Circuit has repeatedly explained that the determination of whether there is substantial evidence is not a quantitative exercise. *See, e.g., Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir.2000); *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Id.* at 114; *see also Morales,* 225 F.3d at 317; *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981) (" 'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.").

■ The Third Circuit has also directed that "[w]here competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence," *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir.1979), *see also Sykes v. Apfel,* 228 F.3d 259, 266 (3d Cir.2000), and explain a rejection of the evidence, *see Schaudeck v. Comm'r of Social Sec. Admin.,* 181 F.3d 429, 435 (3d Cir.1999) (citing *Benton v. Bowen,* 820 F.2d 85, 88 (3d Cir.1987)). "Where the Secretary is faced with conflicting evidence, he must adequately explain in the

ing or with moving hazardous machinery or vibrations. Occasional bending, stooping, and climbing are permitted but never crouching, squatting, kneeling, or crawling. Also, there would be no foot control operation with the left leg. Environmentally, no excessive air pollutants or pulmonary irritants and no regular work in damp, humid, or cold conditions would be permitted. Additionally, the person would be limited to simple one or two step tasks with minimal public contact. (Tr. 55–60.)

record his reasons for rejecting or discrediting competent evidence." *Sykes,* 228 F.3d at 266 (quoting *Benton,* 820 F.2d at 88.) In the absence of a statement as to which evidence was rejected and the reasons therefor, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter,* 642 F.2d at 705. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Id.* (quoting *Dobrowolsky,* 606 F.2d at 407).

## B. Magistrate Judge's Report and Recommendation

We review de novo those portions of the Magistrate Judge's Report and Recommendation to which Plaintiff has objected. 28 U.S.C. § 636(b)(1); *Palmer,* 995 F.Supp. at 552.

## IV. Discussion

The Social Security Administration has adopted a system of sequential analysis for the evaluation of disability claims for DIB and SSI.[5] *See* 20 C.F.R. §§ 404.1520, 416.920. A claimant is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* §§ 404.1505, 416.905. The claimant satisfies his burden by showing an inability to return to his past relevant work. *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir.1986); *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979) (citing *Baker v. Gardner,* 362 F.2d 864 (3d Cir.1966)). Once this showing is made, the burden of proof shifts to the Commissioner to show that the claimant, given his age, education, and work experience, has the ability to perform specific jobs that exist in the national economy. 20 C.F.R. §§ 404.1520, 416.920; *Rossi,* 602 F.2d at 57.

In the instant case, the ALJ determined at the second step that the medical evidence establishes that Schwartz has severe impairments in the form of degenerative disc disease and hypertension. At the third step, however, the ALJ determined

5. These steps are summarized as follows:

1. If the claimant is working or doing substantial gainful activity, a finding of not disabled is directed. If not, then proceed to Step 2. 20 C.F.R. §§ 404.1520(b), 416.920(b).
2. If the claimant is found not to have a severe impairment that significantly limits his or her mental ability to do basic work activity, a finding of not disabled is directed. If there is a severe impairment, proceed to Step 3. *Id.* §§ 404.1520(c), 416.920(c).
3. If the impairment meets or equals criteria for a listed impairment or impairments in Appendix I of Subpart P of Part 404 of 20 C.F.R., and has lasted or is expected to last continually for at least twelve months, a finding of disabled is directed. If not, pro-

ceed to Step 4. *Id.* §§ 404.1520(d), 416.920(d).
4. If the claimant retains residual functional capacity to perform past relevant work, a finding of not disabled is directed. If it is determined that the claimant cannot do the kind of work he or she performed in the past, proceed to Step 5. *Id.* §§ 404.1520(e), 416.920(e).
5. The Commissioner will then consider the claimant's residual functional capacity, age, education, and past work experience in conjunction with the criteria listed in Appendix 2 to determine whether the claimant can perform other work that exists in the national economy. If the claimant can perform other work, the claimant is not disabled. *Id.* §§ 404.1520(f), 416.920(f). *See also Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir.1999).

that these impairments do not meet or equal the criteria of any of the impairments listed in the regulations, and therefore Schwartz does not suffer from a per se disability. (Tr. 25, Finding No. 3.) The ALJ also found that Schwartz's statements regarding his impairments were not entirely credible in light of discrepancies between Schwartz's assertions and information contained in the record. (Tr. 25, Finding No. 4.) Finally, the ALJ found at the fourth step that Schwartz does not retain the residual functional capacity to return to his past relevant work, but in the fifth step, considering his age, education, and residual functional capacity, he is able to make a successful vocational adjustment to work that exists in significant numbers in the national economy, including employment as an assembler, inspector, packer, sorter, and light crane operator, and is therefore not under a disability as defined in the Act.[6] (Tr. 26, Findings 6–11.)

The Chief Magistrate Judge's review of the ALJ's decision revealed no errors of law and found that the ALJ's factual findings were supported by substantial evidence. The Plaintiff contends that the Report and Recommendation contains "several crucial errors of law that fatally undermine its validity." (Pl.'s Obj. at 1.) The Plaintiff raised the following specific objections, which are substantially the same arguments raised in Plaintiff's Motion for Summary Judgment. First, the

Plaintiff contends that the Magistrate Judge's "finding that the ALJ was justified in holding that there is 'a lack of objective medical evidence in the record' (Mag. R & R. at 12) to support the opinion of Plaintiff's treating physician is clearly erroneous and constitutes an impermissible substitution of his own judgment for that of experienced physicians." (Pl.'s Obj. at 1–2.) Second, Plaintiff contends that the Magistrate Judge's "assertion that the ALJ adequately considered whether Plaintiff's impairments were equivalent to the requirements of a Listed Impairment ignores recent Third Circuit holdings." (*Id.* at 4.) Third, Plaintiff contends that the Magistrate Judge's "conclusion that the ALJ had no duty to develop the record of Mr. Schwartz's mental impairment is clearly erroneous." (*Id.* at 6.) Finally, the Plaintiff contends that the Magistrate Judge's "finding that the ALJ had substantial grounds for rejecting Plaintiff's testimony is clear error of law." (*Id.* at 7.)

## A. Weight Given to the Medical Opinion of the Treating Physician

The ALJ declined to give controlling weight to the ·opinions of the treating physician, Dr. Fly, in a Residual Functional Capacity Questionnaire she completed on February 19, 1998, that Schwartz "was disabled due to back pain, left leg shortening, obesity, and hypertension" and that Schwartz "could not work." (Tr. 21–22.)

---

**6.** The ALJ found that Schwartz has a marginal education and unskilled work experience. (Tr. 26.) Further, the ALJ found that:

The claimant lacks the residual functional capacity to lift and carry more than twenty pounds or more than ten pounds on a regular basis, no prolonged standing or walking (not more than one half hour at a time, for up to 2 hours but not more than 4 hours in an 8 hour workday). The individual can sit unrestricted with customary rest break interruptions, but can never climb ladders nor work where balance at heights is necessary or in the vicinity of hazardous moving

machinery or excessive vibrations. Further, this individual can only occasionally climb stairs, steps or ramps, and can never climb hills, slopes, or uneven terrain. Additionally, this individual cannot operate foot controlled equipment with his left foot; can only occasionally bend or stoop; can never squat, crouch, kneel or crawl; and cannot work in a damp, humid, or polluted work environment. The claimant can only perform one to two step tasks and can only have minimal interaction with the public. (Tr. 25–26.)

The ALJ stated that Dr. Fly's "assumption [was] not supported by the objective medical evidence." After providing several items from the record which purportedly support this conclusion, the ALJ noted that "the final responsibility for determining that a claimant meets the definition of disability is reserved to the Social Security Administration," and therefore he would not give Dr. Fly's opinions controlling weight. (Tr. 22.)

An examination of Dr. Fly's statements in the February 19, 1998 questionnaire reveals that Dr. Fly did not explicitly conclude that Schwartz was disabled or that he could not work. Instead, Dr. Fly diagnosed back pain, muscular spasms, left leg shortening, obesity, and hypertension. (Tr. 216.) Because of these impairments, Dr. Fly opined that Schwartz could stand less than two hours and sit about four hours in an eight hour day; required a job in which he could shift at will from standing, walking, or sitting; would need to take unscheduled breaks; could frequently (between ⅓ and ⅔ of an eight-hour day) lift less than ten pounds, occasionally (less than ⅓ of an eight-hour day) lift ten, and never lift twenty or fifty pounds; could not bend or twist at the waist during work; and would be absent from work as a result of his impairments more than three times a month. (Tr. 218–19.) Although Dr. Fly did not reach the ultimate question of Schwartz's disability, her conclusions would, if fully credited, compel such a conclusion.[7] (Tr. 60–61.)

Opinions from a claimant's treating physicians are important in evaluating a claimant's residual function capacity; however, the final responsibility for determining residual functional capacity is reserved to the Commissioner. 20 C.F.R. § 404.1527(e). A treating physician's medical opinion as to the nature and severity of the claimant's impairment(s) will be given controlling weight if the ALJ finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d). Opinions on issues reserved to the Commissioner, such as an opinion that the claimant is disabled, are not medical opinions, however, and thus are not entitled to controlling weight. 20 C.F.R. § 404.1527(e). Because Dr. Fly's statements were not a conclusion as to the ultimate question of the claimant's disability, but rather an assessment of his abilities and limitations, the statements are considered to be medical opinions. 20 C.F.R. § 404.1527(a)(2) (defining medical opinions as statements from a physician reflecting her judgment about the nature and severity of an impairment, including about what the claimant can still do despite the impairment and his physical or mental restrictions). Therefore the argument that the ultimate determination of disability is reserved to the Commissioner does not support the ALJ's refusal to give the opinion of the treating physician controlling weight.

■■■ Because Dr. Fly's statements are medical opinions by a treating physician, the ALJ was required to give them controlling weight if he found them to be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and ... not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d). Even if treating

---

7. Because Dr. Fly's opinion as to Schwartz's impairments and limitations, combined with the opinion of the vocational expert that, if Dr. Fly's opinion is fully credited, there would be no jobs available in the national economy that Schwartz could perform, leads to the conclusion that Schwartz is disabled, we will occasionally use the ALJ's shorthand reference to Dr. Fly's opinion as an opinion that Schwartz was disabled.

physician's opinions are not given controlling weight, an ALJ should give treating physicians' reports "great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel,* 225 F.3d 310, 317–18 (3d Cir.2000) (quoting *Plummer,* 186 F.3d at 429); *see also Adorno v. Shalala,* 40 F.3d 43, 47 (3d Cir.1994). Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer,* 186 F.3d at 429 (citing *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir.1993)). Further, in rejecting the treating physician's opinion, an ALJ may not make "speculative inferences from medical reports" but may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Id.* at 318 (quoting *Plummer,* 186 F.3d at 429); *see also Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988) (holding that "the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence" not "simply by having the administrative law judge make a different medical judgment"); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir.1983).

We may not reweigh the evidence, but rather must ensure that the ALJ's decision was based on substantial evidence. We must also ensure that the ALJ applied the correct legal standards. The Third Circuit has directed that "[w]here competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence," *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir.1979), *see also Sykes v. Apfel,* 228 F.3d 259, 266 (3d Cir.2000), and explain a rejection of the evidence, *see Plummer,* 186 F.3d at 429; *Schaudeck v. Comm'r of Social Sec. Admin.,* 181 F.3d 429, 435 (3d

Cir.1999) (citing *Benton v. Bowen,* 820 F.2d 85, 88 (3d Cir.1987)). "Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Sykes v. Apfel,* 228 F.3d at 266 (quoting *Benton,* 820 F.2d at 88.) Further, even though the record may contain substantial evidence to support the ALJ's decision, the Third Circuit has consistently required such explanations when an ALJ rejects the medical opinion of a treating physician. *See Morales,* 225 F.3d at 320 (holding that a "single piece of evidence is not substantial if the Commissioner failed to resolve a conflict created by countervailing evidence or if it is overwhelmed by other evidence—particularly that offered by a treating physician"); *Plummer,* 186 F.3d at 429; *Adorno v. Shalala,* 40 F.3d 43, 47–48 (3d Cir. 1994) (remanding to ALJ for failure to explicitly weigh all relevant, probative and available evidence and give some reason for discounting the rejected evidence).

The ALJ declined to give controlling weight to the treating physician's opinion that Schwartz was disabled due to back pain, left leg shortening, obesity, and hypertension. (Tr. 21–22.) The ALJ pointed to record evidence that purported to show that Dr. Fly's opinion was not supported by the "objective medical evidence," apparently in the attempt to conclude that Dr. Fly's opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(d). The ALJ did not reach the issue of whether the opinion was "inconsistent with the other substantial evidence" in the case record. The ALJ stated the following as support for his conclusion not to give Dr. Fly's opinion controlling weight:

> A review of treatment notes by Dr. Fly covering the period September 24, 1996 through February 19, 1998 show that Dr. Fly stated on December 3, 1996, that the claimant was only temporarily

disabled (Exhibit 7F). On December 26, 1996, Dr. Fly stated that the claimant had been undergoing physical therapy and that the claimant had no pain when he rose up. His pain was treated with Daypro which was later changed to Naprosyn. His hypertension was medically under control with Tenormin, and his viral gastroenteritis abdominal pain was under control with Prilosec. In addition, the final responsibility for determining that a claimant meets the definition of disability is reserved to the Social Security Administration.

(Tr. 22).

▪ We find that the ALJ's explanation for refusing to give the treating physician's opinion controlling weight was inadequate.[8] The ALJ is correct that Dr. Fly assessed Schwartz as temporarily disabled on December 3, 1996. It is not clear how this evidence supports the ALJ's conclusion that Dr. Fly's opinion that Schwartz was disabled was not supported by the objective medical evidence. We infer from the ALJ's statement that the ALJ believed that because Dr. Fly assessed Schwartz as only temporarily disabled in December 1996, he was not disabled during the entire period in question, or at least not during the entire period until February 1998. Dr. Fly had been treating Schwartz for only a few months when she first assessed him as temporarily disabled on December 3, 1996, however, and his case needed further review. (Tr. 209.) Dr. Fly then repeatedly made findings that Schwartz was temporarily disabled, lasting at least through December 31, 1997, (Tr. 198–209, 213–14), before she made the assessment in February 1998 that Schwartz suffered from limitations that lead to the conclusion that he is permanently disabled (Tr. 216–20).

The ALJ's statement that "[o]n December 26, 1996, Dr. Fly stated that the claimant had been undergoing physical therapy and that the claimant had no pain when he rose up" is a misrepresentation of Dr. Fly's treatment notes.[9] The lack of pain discussed in the treatment notes of that date is part of a discussion of the possibility of Schwartz's suffering from an abdominal anterior hernia. (Tr. 164.) Dr Fly's statement "He does not have pain" was not a general statement that Schwartz suffered no pain anywhere "when he rose up" and had nothing to do with Schwartz's physical therapy for his back and leg problems or with his alleged disabilities.[10]

The ALJ also noted that Schwartz's "pain was treated with Daypro which was later changed to Naprosyn" and that his "hypertension was medically under control with Tenormin." However, the fact that the pain was treated does not mean that it was under control, and even if the pain and hypertension were under control, Schwartz could still be disabled. *Cf. Morales v.*

---

8. Although the reasons pointed to by the ALJ are not "substantial evidence" because they are not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," there is probably substantial evidence to support the ALJ's decision. Even if the ALJ were incorrect in his assessment that Dr. Fly's medical opinions are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," Dr. Fly's opinions are "inconsistent with the other substantial evidence," i.e. the opinions of Dr. Myers and the other agency reviewing physician.

9. "While the [factfinder] may accept or reject testimony, he is not licensed to mischaracterize it." *Carter v. Railroad Retirement Board,* 834 F.2d 62, 66 (3d Cir.1987).

10. The ALJ alleged that Dr. Fly concluded that Schwartz was disabled due to "back pain, left leg shortening, obesity, and hypertension." The ALJ's hypothetical to the vocational expert seemed to include all of these, and also included Schwartz's limited education. There was no mention of a possible hernia in the hypothetical, or, indeed, anywhere else in the record.

*Apfel*, 225 F.3d 310, 319 (3d Cir.2000) (holding that it is improper for an ALJ to reject a treating physician's opinion based on treatment notations that the claimant is stable with medication, because "the relevant inquiry with regard to a disability determination is whether the claimant's condition prevents him from engaging in substantial gainful activity") (citing 42 U.S.C. § 423(d)(1)(A)).

Finally, the ALJ noted that Schwartz's "viral gastroenteritis abdominal pain was under control with Prilosec." However, Schwartz's gastroenteritis has little if anything to do with the possibility of Schwartz's being disabled. The focus of the disability inquiry, including the hypothetical that the ALJ posed to the vocational expert, was on Schwartz's limitations due to hypertension, back pain and his shorter left leg—mostly his ability to walk, stand, and sit. Therefore the evidence that Schwartz's gastroenteritis is under control with medication is not relevant.

For the foregoing reasons, the ALJ's reasons for refusing to give Dr. Fly's opinion controlling weight were inadequate. Further, the ALJ did not even discuss the weight to be given to Dr. Fly's opinion after determining that it would not be given controlling weight. Instead, he implicitly rejected the opinion of the treating physician in its entirety. In addition, the ALJ did not make explicit which evidence he was crediting in making his findings. Because the opinions of treating physicians must be given "great weight," *Morales*, 225 F.3d at 317–18 (quoting *Plummer*, 186 F.3d at 429); *see also Adorno*, 40 F.3d at 47; and because the ALJ must explicitly

weigh the evidence, *Dobrowolsky*, 606 F.2d at 407; *see also Sykes*, 228 F.3d at 266; and explain his decision to reject the opinion of a treating physician, *see id.; Plummer*, 186 F.3d at 429; *Schaudeck*, 181 F.3d at 435; *Benton*, 820 F.2d at 88; and he failed to do so,[11] we will remand the case to the ALJ.

**B. Determination of Credibility of Schwartz's Statements Regarding his Impairments and Complaints of Pain**

■ Schwartz argues that the ALJ improperly discounted Schwartz's credible complaints of pain and the impact of his impairments on his ability to work. When determining the claimant's residual functional capacity, the ALJ must consider a claimant's subjective complaints and the extent to which such subjective symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). The ALJ has a duty to "give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir.1993) (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985)). There is no requirement that there be objective evidence of pain, but "there must be objective medical evidence of some condition that could reasonably produce pain." *Green v. Schweiker*, 749 F.2d 1066, 1070–71 (3d Cir.1984). If there is medical evidence "to support a claimant's complaints of pain, ·the complaints should then be given 'great weight' and may not be disregarded unless there exists

---

11. If we assume that the reasons the ALJ gave for refusing to give Dr. Fly's opinion controlling weight were also the reasons for rejecting the opinion in its entirety, we would find that they were inadequate for the reasons previously stated. However, we cannot assume that the ALJ based his decisions on these

grounds, nor can we even assume that the ALJ considered whether to give the opinion any weight or how much weight to give it after refusing to give it controlling weight. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir.1999); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981).

contrary medical evidence." *Mason*, 994 F.2d at 1067–68 (citing *Carter v. Railroad Retirement Board*, 834 F.2d 62, 65 (3d Cir.1987); *Ferguson*, 765 F.2d at 37). Further, the ALJ is required "to give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir.1999) (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.1979)). The ALJ may reject such subjective complaints in part or in whole, however, if he finds that they are not credible. *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir.1974).

When considering subjective complaints, the ALJ must consider the entire case record, "the determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling 96–7p, 1996 WL 374186 (1996); *Schaudeck*, 181 F.3d at 433 (citing *Cotter v. Harris*, 642 F.2d 700, 705–06 (3d Cir.1981) (holding that the ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding)). Such an explanation provides a reviewing court with a basis on which to assess whether "significant probative evidence was not credited or [was] simply ignored." *Schaudeck*, 181 F.3d at 433 (citing *Cotter*, 642 F.2d at 705). Relevant factors include the claimant's statements, appearance, and demeanor; medical signs and laboratory findings; treatment and response; treating and examining physicians' opinions regarding the credibility and severity of the claimant's subjective complaints; and any other relevant evidence. SSR 96–7p.

Here, there is objective medical evidence of conditions "that could reasonably produce pain," i.e. Schwartz's shorter left leg and left foot drop. *Green*, 749 F.2d at 1070–71. It is not clear, however, whether the ALJ gave "serious consideration [to Schwartz's] subjective complaints of pain" and inability to work because of his impairments. *Mason*, 994 F.2d at 1067. The ALJ has pointed to specific evidence in the case record as support for his finding on credibility. There is medical evidence supporting Schwartz's allegations, but there is also medical evidence to the contrary, so the ALJ could be justified in rejecting Schwartz's subjective complaints, *see, e.g., id.* at 1067–68. We are deeply troubled, however, by the quality of the ALJ's explanation: although it includes some evidence that supports the rejection of Schwartz's allegation,[12] much of the evidence cited does not support the ALJ's conclusion,[13]

---

12. An SSA employee observed on November 26, 1996, that Schwartz had "no trouble walking" when he brought his Request for Reconsideration form into the District Office. An MRI taken on February 12, 1998, showed that Schwartz's vertebral body heights and disc spaces were well maintained. A state agency physician [Dr. Myers] reviewed the medical evidence in the file on September 26, 1996, and assessed Schwartz's residual functional capacity at the full range of medium work. A second and independent review of the file by another state agency physician on November 5, 1997, found that Schwartz's symptoms were "questionable," citing Schwartz's failure to replace a leg brace that was destroyed in a fire; Schwartz's leaving his past employment because he was laid off; Schwartz's statement to Dr. Fly, one month after he was first denied benefits, that he was unable to work because of his symptoms; and the observation by the SSA employee that he "had no trouble walking."

13. The ALJ characterizes Schwartz's activities of going shopping with his wife, visiting his mother twice each week and driving his car every day as "an impressive list of activities

and the explanation fails to consider the entire case record.[14]

■ Further, the ALJ's determination as to the credibility of Schwartz's subjective complaints could have been influenced by his rejection of Dr. Fly's opinion.[15] Likewise, because Dr. Fly's opinions as to Schwartz's limitations were based in part on her acceptance of Schwartz's allegations of pain, it is possible that the ALJ's rejection of Dr. Fly's opinion was based in part on his evaluation of Schwartz's credibility. If the ALJ had given Dr. Fly's opinions

credit, his analysis of Schwartz's subjective complaints might have been significantly different, and vice versa. Because these rejections of evidence are intertwined, and in light of the inadequate explanations provided by the ALJ for his findings on Schwartz's credibility and Dr. Fly's opinions, the ALJ's determination as to the credibility of Schwartz's allegations of pain and inability to work cannot be said to be supported by substantial evidence. We will remand to the ALJ for reconsideration and a clear and logical statement of the facts supporting his conclusions.

---

for an individual who alleges the inability to work at any exertional level." Such activities, however, are fully consistent with the limited abilities alleged by both Schwartz and his treating physician. *See* 20 C.F.R. § 404.1572(c) ("Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.") The ALJ did not explain how Schwartz's admission to these limited activities persuaded him to believe that Schwartz could sit, stand, or walk for longer than he professed he could. The ALJ also pointed out that on January 7, 1997, Dr. Wukich "noted that the claimant ambulated with his short leg and foot drop gait." Such evidence bolsters Schwartz's claim, however: he is not alleging that he cannot walk at all, but he is alleging that he has a short leg and foot drop gait, which has caused his inability to engage in substantial gainful activity. The ALJ also alleges that "Dr. Gusa stated that on March 20, 1997, that the claimant's pain problems would be resolved without intervention when the claimant got a shoe lift or had surgery." The ALJ misrepresented Dr. Gusa's opinion, however: he said that it was possible that Schwartz's pain problems would be resolved, not that they certainly would be, if one of the recommended courses of treatment were pursued.

14. There is, for example, no mention in this explanation, or indeed anywhere in the ALJ's opinion, of the medical evaluation performed on Schwartz on March 8, 1996, by Mark Mishkan, M.D., or the contents of a residual physical functional capacity assessment form

completed by Sharon Wander, M.D., an agency reviewing physician, on March 13, 1996, or of a Pennsylvania Department of Public Welfare Employability Assessment Form completed by Deborah Ramanathan, M.D., on August 15, 1996. An SSA employee observed on February 7, 1996, that Schwartz "walks slowly, with a bit of a sway" when he brought his Disability Report form into the District Office. Further, although the ALJ extensively quotes the part of the state agency physician's assessment on November 5, 1997 questioning the credibility of Schwartz's complaints, specifically of the severity of the symptoms, he fails to mention that this physician also found that "symptoms of aches/pains in back and leg are attributable to claimant's medically determinable impairment." (Tr. 177.) As a whole, this body of evidence contains objective evidence and medical opinions both beneficial and detrimental to Schwartz's case and should have been explicitly considered by the ALJ.

15. In evaluating the intensity and persistence of a claimant's symptoms, the ALJ should consider "all of the available evidence, including [claimant's] medical history, the medical signs and laboratory findings, and statements from [the claimant and his] treating or examining physician or psychologist, or other persons about how [claimants'] symptoms affect [the claimant, as well as] the medical opinions of [the claimant's] treating source and other medical opinions." 20 C.F.R. § 404.1529(c)(1).

## C. Development of the Record Regarding Schwartz's Alleged Mental Impairment

Schwartz argues that the ALJ failed in his duty to fully develop the record regarding his alleged mental impairment, low intelligence, by failing to order psychological testing requested by his attorney at the hearing.[16] Schwartz further argues that the ALJ's decision makes no mention of whether he considered the attorney's request, and if so, his basis for rejecting it.

 Administrative law judges have a duty to develop a full and fair record in social security cases, *see Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir.1995) (citing *Smith v. Harris*, 644 F.2d 985, 989 (3d Cir.1981)), and thus ALJs must secure relevant information regarding a claimant's entitlement to benefits. *See id.* (*citing Hess v. Secretary of Health, Education, & Welfare*, 497 F.2d 837, 841 (3d Cir.1974)). A duty exists even when the claimant is represented by counsel, because an administrative hearing is not an adversarial proceeding, although the duty is heightened when the claimant is unrepresented. *See*

*Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir.1979); *see also Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir.1994); *Baker v. Bowen*, 886 F.2d 289, 292 (10th Cir.1989). The claimant, however, still has the ultimate burden of producing sufficient evidence to show the existence of a disability. *See Hess*, 497 F.2d at 840 (recognizing that although the SSA provides an applicant with assistance to prove his claim, the ALJ does not have a duty to search for all of the relevant evidence available, because such a requirement would shift the burden of proof); 20 C.F.R. §§ 404.1512(a), 416.912(a).

The ALJ may not ignore evidence of a mental impairment. When there is evidence in the record "of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a," which helps to ensure that the Commissioner seriously considers a claimant's mental health impairments when determining whether a claimant is

**16.** Schwartz did not claim that he had a mental impairment in his first application for DIB, his request for reconsideration, or the application currently at issue; instead he claimed only that his disabling conditions were leg, back, and neck pain. (Tr. 64, 72, 100, 115, 122, 134.) Even though Schwartz was represented by counsel for more than a year before the hearing, the issue appears to have been raised for the first time at the hearing, and it was not clearly raised even then. (Tr. 46, 62) Schwartz's attorney briefly questioned Schwartz about his education, eliciting the fact that Schwartz was enrolled in special classes, but he also established that Schwartz could, for example, leave a note for his wife if he was going out, and explain where he was going and when he would return. (Tr. 46.) At the end of the hearing, after the ALJ asked the vocational expert whether there is "any significant vocational factor other than pain or fatigue that we haven't addressed that you noticed in the exhibit

folder," the attorney interrupted and made what appears to be an attempt to seek further evidence of Schwartz's low intelligence:

> ATTY: I'm sorry, Your Honor. The only thing Your Honor would be given his testimony with regard to his limited education there was no psychological testing done by the Bureau of Disability Determination. I would ask that he (INAUDIBLE) from my client disabled based on either his testimony or on his residual functional capacity by Dr. Fly that you consider having him evaluated by the State Agency on the basis of, for psychological testing. I think both.
> ALJ: Okay you're asking me to consider, I will look at the evidence to see if it's appropriate, okay.

(Tr. 62.) Although the transcript is somewhat cryptic, we find that the claimant sufficiently alleged that his intelligence may be so low as to be either a disability or a nonexertional limitation to be considered in determining his residual functional capacity.

disabled. *Plummer v. Apfel,* 186 F.3d 422, 432 (3d Cir.1999).

All stages of the "special technique" in § 404.1520a must be documented at all levels of the administrative process. 20 C.F.R. § 404.1520a(e). At the initial and reconsideration levels of the process, a special form must be completed, but at the ALJ hearing and Appeals Council levels, the application of the technique must be documented in the decision. *Id.* The mandated technique requires the ALJ first to evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). In making this initial determination of mental impairment, "an ALJ is not required to employ the assistance of a qualified psychiatrist or psychologist," although if the determination were made at an earlier level, such assistance would be required. *Plummer,* 186 F.3d at 433. If the ALJ determines that the claimant has a medically determinable mental impairment, the ALJ "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s)." § 404.1520a(b)(1). The ALJ "must then

rate the degree of functional limitation resulting from the impairment(s)" and record the findings.[17] *Id.* (b)(2). The ALJ next must determine the severity of the mental impairment(s) by using the ratings of functional limitations and determine whether the impairment meets or is equivalent in severity to a listed mental disorder. *Id.* (d). If the ALJ finds that the claimant has a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, the ALJ must then assess the claimant's residual functional capacity. *Id.*

 We conclude the ALJ did not give proper consideration to Schwartz's alleged mental impairments as is required by law, and thus did not fulfill his duty to develop the record with respect to Schwartz's alleged low intelligence. Schwartz produced sufficient evidence to put the ALJ on notice that he may have low intelligence[18] and that the ALJ should determine whether this alleged disability was a mental disability, using the § 404.1520a technique. Although the claimant bears the burden of putting forth evidence of his impairments, the Commissioner is required to develop the claimant's medical history and arrange

17. The ALJ must rate the degree the claimant's functional limitation, based on the extent to which the impairment(s) interferes with claimant's ability to function independently, appropriately, effectively, and on a sustained basis, considering such factors as the quality and level of the claimant's overall functional performance, any episodic limitations, the amount of supervision or assistance the claimant requires, and the settings in which the claimant is able to function. Four broad functional areas are rated: activities of daily living, such as cleaning, shopping, cooking, maintaining a residence, and using public transportation, telephones and directories, and a post office; social functioning, i.e. the capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals; concentration, persistence, or pace, especially in the context of

whether the claimant can timely and appropriately complete tasks commonly found in work settings; and episodes of decompensation, i.e. exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning in the first three functional areas. 20 C.F.R. § 404.1520a(c); 20 C.F.R. Pt. 404, Subpt. P, App. 1; 12.00C.

18. He provided school records that indicated that he was held back in the second and third grades, and that his grades in the other years were below average. (Tr. 185–89.) Unfortunately, it also appears that the records of I.Q. scores and any other references to "Mental Ability" and "Special Aptitude" were redacted. Schwartz also testified that he attended special classes both before and after his accident, because of difficulties with "math, spelling, everything like that." (Tr. 46.)

for consultative examinations if the information needed is not readily available from the claimant's treatment sources. 20 C.F.R. §§ 404.1512, 416.912.

We acknowledge that ALJs have some discretion in deciding whether consultative exams or other evaluations or tests are warranted. *See Plummer,* 186 F.3d at 433; *Hess,* 497 F.2d at 840. However, the ALJ must still explain his reasons for deciding not to seek such additional information and his reasons must be grounded in the evidence.[19] Further, the ALJ has a special duty to make findings when mental impairments are alleged: the regulations explicitly require that the evidence of a mental impairment "must be carefully reviewed and conclusions [be] supported" by the evidence: § 404.1520a(b); *see Plummer,* 186 F.3d at 433. There is nothing in the ALJ's decision to indicate whether he considered Schwartz's attorney's request for psychological or intelligence testing for Schwartz, and if so, his basis for rejecting the request. Indeed, there is no mention of the alleged mental impairment at all.

The Defendant argues, and the Magistrate concurs, that the record was sufficiently developed, because neither Schwartz's limited intelligence nor his lack of education prevented him from obtaining gainful employment in the past. Further, the ALJ's hypothetical to the vocational expert and the ALJ's findings incorporated Schwartz's marginal educational level,[20]

and limited Schwartz to unskilled work, which requires little or no judgment to do simple duties that can be learned on the job in a short period of time. While it is tempting as a reviewing court to re-evaluate the evidence ourselves or simply examine such evidence as Schwartz's education and work experience and declare that there is sufficient evidence to support the ALJ's implicit findings as to Schwartz's alleged mental disability, we may not do so. First, we may not make the disability determination ourselves; the ALJ is the factfinder. Second, the ALJ may not make implicit findings. *See Plummer,* 186 F.3d at 433; § 404.1520a(b); Part III A., *supra.* Third, the regulations mandate that in determining whether a claimant has an impairment, the claimant's age, education, and work experience may not be considered; the impairment must be established by medical evidence. 20 C.F.R. §§ 404.1508, 1520.

Therefore, we must remand to the ALJ for an express consideration of Schwartz's alleged mental disability, including testing to determine whether Schwartz meets any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P. App. 1, 12.05. The ALJ must determine and explain whether Schwartz's alleged mental impairment meets such a listing, and if not, expressly consider his alleged lower intelligence in the residual functional capacity determination.

---

19. For example, the record could show that a claimant's alleged low intelligence does not rise to the level of a severe mental impairment, i.e. an impairment that significantly limits a claimant's mental ability to do basic work activities, which are the abilities and aptitudes necessary to do most jobs including "capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1520, 404.1521. Such evidence may include observations of SSA employees who met the claimant, statements by or medical evidence from the claimant's treating physician or the agency examining physicians, the claimant's daily activities, educational attainments, and his work history, and evidence of his ability to function despite his alleged mental impairment. *See id.* § 1512.

20. Although a marginal educational level may coincide with low intelligence in some cases, they are distinctly different.

**D. Determination of Whether Schwartz's Condition Was Equivalent to a Listed Impairment**

The Listing of Impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 describes impairments considered severe enough to prevent a person from engaging in any gainful activity, i.e., it is a listing of per se disabilities. Schwartz argues that the medical evidence of record fairly raises the issue of whether his condition is equivalent to Listing 1.05C, and the ALJ failed to consider such equivalency. Schwartz also argues that an evaluation of equivalence should have been made by a medical expert designated by the Commissioner. Finally, Schwartz argues that the ALJ did not adequately explain his reasons for finding that a Listing was not met or equaled.

The ALJ's discussion of whether Schwartz's impairments meet the criteria of any of the per se disability listings or are equivalent to such a disability consists of the following statement: "The claimant has no impairment which meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations (20 C.F.R., Part 404, Subpart P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (Tr. 19.) The ALJ also made a finding that "the medical evidence establishes that the claimant has degenerative disc disease and hypertension, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 25.)

The ALJ is responsible for deciding the ultimate legal question of whether a listing is met or equaled. *See* 20 C.F.R. §§ 404.1527(e), 416.926(d), 416.927(e); Social Security Ruling 96–6p, 1996 WL 374180. The ALJ is therefore not required to accept the findings of agency medical or psychological consultant as to whether an individual's impairment is equivalent in severity to any listed impairment. However, a physician or psychologist designated by the Commissioner must give an opinion, based on the evidence, on the issue of equivalence;[21] such opinion must be received into the record as expert opinion evidence; and the ALJ must give it appropriate weight. *See* SSR 96–6p. Here, the ALJ made the determination without the benefit of the required opinion by a designated consultant. It appears that the ALJ relied on the reports of the treating or examining physicians and determined himself that none of their findings are equivalent in severity to the criteria of any listed impairment.[22] Such analysis, without the consideration of the required expert opinion, is impermissible.

Further, we cannot rely on our speculation as to how the ALJ reached his conclusion. As we have discussed at length, the ALJ must set forth the reasons for his decision. *See, e.g., Cotter v. Harris,* 642 F.2d 700, 704–05 (3d Cir.1981); Part III. A., *supra.* The Third Circuit held recently in *Burnett v. Commissioner,* 220 F.3d 112, 119 (3d Cir.2000), that this requirement also applies to the ALJ's decision as to whether a claimant's impairment meets or equals a listed impairment. In *Burnett,* the ALJ's step three analysis states in its entirety: "Although [Burnett] has established that she suffers from a severe musculoskeletal [impairment], said impairment

**21.** In fact, a special form must be completed to ensure that a physician or psychologist designated by the Commissioner has considered the issue of equivalence. *See* SSR 96–6p. No such form appears in the record in this case.

**22.** None of the treating or examining physicians expressed any opinions as to whether Schwartz's impairments met or equaled a listing.

failed to equal the level of severity of any disabling condition contained in Appendix 1, Subpart P of Social Security Regulations No. 4." *Id.* Such a statement, in which the ALJ failed to identify the relevant listed impairments, discuss the evidence, or explain his reasoning, was inadequate because it was beyond meaningful judicial review. *See id.*

As in *Burnett*, we have no way to review the ALJ's inadequate step three ruling. Therefore we will remand the case so that the ALJ can obtain the necessary expert opinion or opinions,[23] and for a discussion of the evidence and an explanation of reasoning supporting a determination of whether Schwartz's impairment or combination of impairments is equivalent in severity to one of the listed impairments.[24]

### V. Conclusion

The ALJ did not explicitly weigh the evidence and or adequately explain his reasons for refusing to give the opinion of Schwartz's treating opinion controlling weight and for rejecting the opinion altogether. The ALJ also provided an inadequate explanation for his finding as to Schwartz's credibility, and the ALJ's determination as to the credibility of Schwartz's allegations of pain and inability to work are not supported by substantial evidence. Likewise, the ALJ did not explain his refusal to seek psychological or intelligence testing of Schwartz, did not

document his findings regarding Schwartz's alleged mental impairments as required by 20 C.F.R. § 404.1520a, and did not fulfill his duty to develop the record with respect to Schwartz's alleged mental impairment. Finally, the ALJ did not obtain the opinion of a medical expert as to whether Schwartz's impairment or combination of impairments is equivalent in severity to one of the listed impairments, nor did he discuss the evidence or explain his reasoning regarding equivalence to a listed impairment.

Accordingly, we will remand to the ALJ for further proceedings and explanations consistent with this opinion. An appropriate order follows.

### ORDER

AND NOW, this eighth day of March 2001, upon consideration of Plaintiff's Memorandum of law in Support of Plaintiff's Motion for Summary Judgment, filed on June 23, 2000, Defendant's Brief in Support of His Motion for Summary Judgment, filed August 18, 2000, Plaintiff's Reply Brief, filed September 20, 2000, the Report and Recommendation of Chief Magistrate Judge Melinson, filed on December 29, 2000, and Plaintiff's objections thereto, filed on January 16, 2001, IT IS ORDERED that:

1. The Report and Recommendation is REJECTED and SET ASIDE;

---

**23.** Because we have found it necessary to direct the ALJ to seek further evidence to evaluate Schwartz's claim that he has a mental impairment, including his assertion that psychological or intelligence testing may reveal such a low I.Q. as to meet the criteria for mental retardation at 12.05 in the listings, an expert opinion from a psychologist may be necessary as well.

**24.** There has been discussion in the various filings about whether Schwartz's impairments in fact met or were equal to a listing, and about the proper method that should be used

to make such a determination. There are several ways in which a person may be considered disabled using the listings. *See* 20 C.F.R. §§ 404.1526, 416.926 (providing more detail than § 404.1526). However, we cannot review the evidence to make this determination de novo or under the guise of finding that there is substantial evidence to support the ALJ's decision. We do not know the method used by the ALJ, because he did not explain himself, so we cannot determine whether he used the correct method or whether there was substantial evidence to sustain his decision based on that method.

2. Plaintiff's Objections are SUS-TAINED and GRANTED;

3. The Defendant's motion for summary judgment is DENIED;

4. The Plaintiff's motion for summary judgment is GRANTED to the extent that we are remanding; and

5. The matter is REMANDED to the ALJ for proceedings consistent with the foregoing opinion.