**Earle E. BENTON for Laurie Ann BENTON, Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Appellee.**

**No. 86–1460.**

United States Court of Appeals, Third Circuit.

Argued Feb. 11, 1987.

Decided June 2, 1987.

Stephen F. Gold (argued), Ilene W. Shane, Philadelphia, Pa., for appellant.

Diane C. Moskal (argued), Assistant Regional Counsel, Beverly Dennis, III, Chief Counsel, Region III, Dept. of Health & Human Services, Philadelphia, Pa., Edward S.G. Dennis, Jr., U.S. Atty., James G. Sheehan, Asst. U.S. Atty., Chief, Civil Division, Joan K. Garner, Asst. U.S. Atty., Philadelphia, Pa., for appellee.

David Andrew Schwartz, Reitnour, Mumma & Schwartz, Spring City, Pa., amicus curiae, Camphill Village U.S.A. on side of appellant.

Thomas K. Gilhool, Frank J. Laski, Judith A. Gran, The Public Interest Law Center of Philadelphia, Philadelphia, Pa., amici curiae, Speaking for Ourselves and Assn. of Retarded Citizens/Pa. on side of appellant.

Before HIGGINBOTHAM, STAPLETON, Circuit Judges, and RODRIGUEZ *, District Judge.

## OPINION OF THE COURT

RODRIGUEZ, District Judge:

This is an appeal from an order of the United States District Court for the Eastern District of Pennsylvania which affirmed a final decision of the Secretary of Health and Human Services ("the Secretary") that appellant, who is mentally retarded, was unable to form an intent to reside in New York and was therefore not voluntarily living there. Consequently, appellant was not eligible to receive New York's State Supplementary Payments ("SSP") to appellant's Supplemental Security Income ("SSI") payments. Because this court finds that the Secretary's determination was not based upon substantial evidence, we now reverse.

### I

Appellant, Laurie Ann Benton, is 28 years old and has been mentally retarded since birth. In 1965 at age 6 she was enrolled as a resident in the Camphill Special School in Glenmore, Pennsylvania where she lived for twelve years. After graduating from that school she moved into a private group home and was enrolled for three years in the Liberty Forge School in Chester County, Pennsylvania. During this time, Laurie underwent a trial period at the Camphill Adult Village in Kimberton, Pennsylvania, a principally agricultural community. According to Laurie's parents, "She made it evident ... that this was not the life that was attractive to her." Record at 167. In December, 1980 Laurie moved into the Camphill Adult Village in Copake, New York, a craft community.[1] She has lived and worked in that community since that time.[2]

Since moving to New York, Laurie has visited her parents at their home in Pennsylvania twice annually—for approximately ten days both in the summer and at Thanksgiving. Record at 40. According to her father, "She's always glad to come home but after about ... a week or so

---

* Honorable Joseph H. Rodriguez, United States District Judge for the District of New Jersey, sitting by designation.

1. Camphill Village in Copake, New York is a community in which individuals who are mentally retarded, and those who are not, live and work together. Record at 241–242. The Village includes farm buildings, workshops, a community center, a gift shop, a co-op store, and 17 family houses. Record at 242. It is part of Camphill's network of communities. *Id.* Amicus Curiae Camphill Village, U.S.A., Inc. has argued, *inter alia,* that Camphill is a community, as distinguished from an "institution for people with mental disabilities." Brief at 8.

2. Laurie's work consists of working in the Dollshop in the mornings, knitting coverings for doll bodies. In the afternoons she washes dishes, chops vegetables and makes salads in one of the households. Record at 77, 163.

she's quite anxious to get back to her peers and to her family up at Copake." Record at 50.

Laurie was interviewed by representatives of New York's Mental Health Information Service in 1981, 1982 and 1984 and each time was determined to show a satisfactory understanding, acceptance and willingess to remain as a voluntary resident of the Camphill Village at Copake. Record at 163. Ms. Aase J. Collins, an Associate Director of the Village and her colleague, Mrs. Mary Sorrels, stated that "It is the experience of those who live and work with Laurie Benton that she is happy in the Village and intends to remain here indefinitely." Record at 163.

Dr. Milton Brutten, a clinical psychologist who had examined Laurie when she was a child, examined her again in November, 1984 and stated that "she expresses her clear cut intent to remain [at Copake] by her actions and responses to questioning.... [S]he expresses not only an implied intent but an expressed desire to remain in her present setting...." Record at 166. In Laurie's own words, as reported by Dr. Brutten, "I like to live up there, it's fun." Record at 165. Dr. Brutten noted that Laurie achieved an I.Q. score of 46 and that, allowing for the "standard error of the measure" of plus or minus five points, Laurie's "real" I.Q. score lay in the range of 41 to 51. Record at 164. Kate Meinecke, an Associate Director of Camphill Village, had previously written to Laurie's father, informing him that Laurie's I.Q. was 33/34. Record at 77.

Laurie Benton applied for SSI benefits on June 28, 1983.[3] The ALJ found that because New York had not determined Laurie to be a resident of a different state, she was therefore a resident of New York. Record at 27.[4] The Appeals Council decided on its own motion to review the ALJ's decision.[5]

The Council pointed out that the Secretary's agreement with New York had recently been revised to provide that an individual was a resident of New York if he was "voluntarily living in the State for purposes of making it his home." Record at 20. The Council thus concluded that 42 C.F.R. § 435.403 need not be considered,[6] and that "the Appeals Council must restrict itself to the narrow question of whether Laurie Benton is voluntarily living in the State of New York...." Record at 20, 22.

The Council acknowledged that "The evidence is undisputed as to the suitability of Camphill Village for Laurie and her desire to remain in these surroundings. She clearly has the capacity to make known her happiness or unhappiness with the institutional facilities in which she is placed, as evidenced by her rejection of the Camphill

---

3. SSI is a national program administered by the Secretary to provide supplemental security income to aged, blind, and disabled individuals. *See* 42 U.S.C. § 1381. It is supplemented in many states, including New York and Pennsylvania, by State Supplementary Payments ("SSP"), a program administered pursuant to written agreements between the Secretary and the states, authorized under 42 U.S.C. § 1382e. The amount of SSP varies according to one's state of residence, and New York's payments exceed those of Pennsylvania.

4. The ALJ concluded that, under 42 C.F.R. § 435.403 (relating to residency for purposes of Medicaid), which the Appeals Council had initially advised the appellant would be the basis for determining her residence, *see* Record at 20, an individual was a resident of the state where the institution was located unless the state determined that the individual was a resident of another state. Record at 27.

5. The Appeals Council may itself decide to review an ALJ's decision within 60 days after the decision. *See* 20 C.F.R. § 416.1469.

6. 42 C.F.R. § 435.403, initially directed by the Appeals Council to be the basis of the residency determination, provides in subsection (i)(2) that "For any institutionalized individual who became incapable of indicating intent before age 21, the state of residence is—

(ii) The parent's or legal guardian's state of residence...."
42 C.F.R. § 435.403(c) provides:
[A]n individual is considered incapable of indicating intent if the individual—
(1) Has an I.Q. of 49 or less or has a mental age of 7 or less, ...
(2) Is judged legally incompetent; or
(3) Is found incapable of indicating intent based on medical documentation obtained from a physician, psychologist, or other person licensed by the State in the field of mental retardation.

Adult Village in Kimberton, Pennsylvania [reference to exhibit omitted]." Record at 22. The Council referred to Dr. Brutten's report, and to the fact that Laurie had signed voluntary admission forms to become and to remain a resident of Copake. Record at 23. Nevertheless, the Council opined that "this evidence does *not* establish a capacity to establish legal residence and to comprehend and carry out the legal obligations that accompany such a choice." *Id.* (emphasis in original). It went on to state:

> The evidence most relevant to the issue before the Council is that which shows that Laurie has an I.Q. of either 33/34 or 46 (an unexplained discrepancy) and that she was placed in New York not by her own initiative and effort, but by her parents. Even the voluntary admission form that she "signed" states on its face that she cannot *leave* the facility without the permission of the Director, who may if he deems it necessary seek a court order to prevent her from doing so. Clearly, if she is not considered capable of making even the decision to leave the facility, then she is even less capable of choosing a legal residence. "Intent" implies the ability to effectuate the goal. Laurie would be incapable, in the Council's opinion, to arrange for her admittance or continuing stay at Camphill Village or anywhere else. That decision is made for her, albeit her happiness and security are considered.

*Id.* (emphasis in original).[7]

Based on this analysis, the Appeals Council reversed the ALJ [8] and determined that Laurie was a resident of Pennsylvania, and not of New York.[9]

The district court affirmed the Appeals Council's decision, stating that "although in this case there is evidence upon which the Secretary might properly have reached a different decision, the decision rendered was supported by substantial evidence." Record at 9.

II

■ This court has jurisdiction to review the decision of the district court pursuant to 28 U.S.C. § 1291 (1982). Our review of agency factual findings is limited to determining whether those findings are supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 401, 91 S.Ct. at 1427; *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981). This court has previously stated that "This oft-cited language is not, however, a talismanic or self-executing formula for adjudication;.... A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence...." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence. *See Brewster v. Heckler*, 786 F.2d 581 (3d Cir.1986). After acknowledging that "The evidence is undisputed as to ... [Laurie's] desire to remain in these surroundings," and that "she clearly has the capacity to make known her happiness ... with the institutional facilities in which she is placed," the Appeals Council stated that "neither the report of

---

7. Amici Curiae Speaking for Ourselves and the Association for Retarded Citizens/Pennsylvania have argued pursuasively that I.Q. is primarily a measure of academic functioning, designed to predict performance in school, and that it is not a valid measure of an individual's ability to form an intent respecting residence. Brief at 6–16.

8. The Appeals Council's decision constituted the final decision of the Secretary for the purpose of conferring jurisdiction on the district court

under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981.

9. The Appeals Council raised, but did not address, appellant's contention that she could not be a Pennsylvania resident, since the Secretary's agreement with Pennsylvania provided that an individual was no longer a Pennsylvania resident if he left the state for longer than 90 days. Record at 22.

Dr. Brutten nor the voluntary admission forms ... establish any *more* than this." Record at 22–23 (emphasis in original). This court is bewildered as to what more need be shown than Laurie's *desire* to remain at Copake in order to establish that she is voluntarily living there. While acknowledging and ostensibly crediting the report of an experienced clinical psychologist relating to Laurie's cognitive abilities, the Appeals Council actually relied on factors which it presumed to be dispositive of Laurie's ability to form an intent but which were not as probative of such ability as was the psychologist's opinion. The Council properly phrased the relevant inquiry as "whether Laurie Benton is voluntarily living in the State of New York ...," Record at 22, but proceeded to accord undue emphasis to factors extraneous to that inquiry. It looked to Laurie's capacity "to comprehend and carry out [her] legal obligations" and to her capability "to arrange for her admittance or continuing stay at Camphill Village or anywhere else." Record at 23. The Council concluded, incorrectly in our view, that " 'Intent' implies the ability to effectuate the goal." *Id.*

■ Although the Appeals Council stated that 42 C.F.R. § 435.403 need not be considered, Record at 20, it nonetheless deemed "most relevant" evidence of Laurie's I.Q. as well as its determination that Laurie's parents had "placed" her in New York. Record at 23. It is thus apparent that the Appeals Council gave these factors an overriding presumptive status that they did not deserve. While these factors are appropriate for consideration in attempting to gauge Laurie's ability to form an intent, they are but single factors and may not be given disproportionate weight in the face of countervailing probative evidence. When pitted against Dr. Brutten's report, the evidence relied on by the Appeals Council to determine that Laurie was not voluntarily living in New York cannot be said to be substantial. That evidence was overwhelmed by Dr. Brutten's opinion following his examination of the appellant, and the Secretary incorrectly resolved this evidentiary conflict. The Appeals Council apparently rejected Dr. Brutten's report, but

did not adequately explain its reasons for doing so. As the court stated in *Gober v. Matthews,* 574 F.2d 772, 776 (3d Cir.1978):

> [U]nless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." [Citation omitted].

### III

In assessing the district court's affirmance of the Secretary's decision, we note that the difficulty of the district court's task was increased because the Appeals Council's decision mentioned and seemingly weighed Dr. Brutten's opinion. The district court therefore mistakenly, albeit reluctantly, concluded that the Appeals Council decision was supported by substantial evidence, even though the Council had not adequately explained its reasons for rejecting or discrediting countervailing evidence.

### IV

What remains is for us to determine whether to remand this case to the Secretary for further proceedings or to reverse the district court with a direction that appellant be awarded State Supplementary Payments as a New York resident. In *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir.1979) this court stated that "[A] reviewing court may remand a case to the Secretary for good cause, 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.' " [citing *Saldana v. Weinberger,* 421 F.Supp. 1127, 1131 (E.C.Pa.1976); *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir. 1975).] Based upon our review of the record, we are unable to say that probative evidence was not weighed by the Secretary, for the Appeals Council explicitly mentioned all of the evidence of record which would be relevant in assessing Laurie Ben-

ton's ability to form an intent to voluntarily reside in New York. As we indicated, however, the evidence relied upon by the Secretary in support of his decision was not substantial.

In *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir.1986) the court said:

The decision to direct the district court to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is ... entitled to benefits. [Citations omitted]. When faced with such cases, it is unreasonable for the court to give the ALJ another opportunity to consider new evidence ... because the administrative proceeding would only result in further delay in the receipt of benefits.

■ In this case, as in *Gilliland*, the administrative record is well developed. Here there is no evidence which would warrant affording the Secretary an opportunity to revise his determination. The problem is not that the Secretary failed to consider probative evidence, but rather that he improperly weighed the relevant evidence of record in arriving at his determination. Thus the record is fully developed and substantial evidence on the record as a whole indicates that appellant is voluntarily living in New York. Accordingly, the case is remanded to the district court with an instruction that it award appellant State Supplementary Payments as a resident of New York.

STAPLETON, Circuit Judge, dissenting:

As I read the Secretary's decision, Laurie Ann Benton was found not to be "voluntarily living in the State of New York for the purpose of making the State her home" because (1) she had not made a decision to move there (i.e. her presence in New York was the result of her parents' decision to place her in a sheltered community in the state), (2) she could not make a decision to leave New York (i.e. she would remain there unless and until her parents decided that she should move from that state), and (3) she was unable to comprehend the concept of establishing a home (i.e. of commit-

ting to remain in her current environment indefinitely). Nothing said in the Secretary's decision is inconsistent with the conceded fact that Ms. Benton is able to experience pleasure and displeasure from her environment and to communicate those experiences.

Giving deference, as I do, to the Secretary's construction of the applicable legal standard, and finding, as I do, that his decision is supported by substantial evidence, I would affirm.