NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4445
_____

LAURIE STERNBERG,
                              Appellant

v.

COMMISSIONER OF SOCIAL SECURITY


_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 3:09-CV-2263)
District Judge:  Honorable Joel A. Pisano
_____

Submitted Under Third Circuit LAR 34.1(a)
June 23, 2011
_____

Before: HARDIMAN and GREENBERG, <u>Circuit Judges</u>, and POLLAK, <u>District Judge</u>[*]

(filed: July 19, 2011 )
_____

OPINION
_____

POLLAK, <u>District Judge</u>

_____

[*] Honorable Louis H. Pollak, Senior Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

Laurie Sternberg appeals from an order of the District Court affirming the decision of the Administrative Law Judge ("ALJ") to deny Sternberg's claim for disability insurance benefits. For the following reasons, we affirm.

## I. **<u>PROCEDURAL HISTORY</u>**

On December 13, 2005, Sternberg filed an application for disability insurance benefits; she alleged that knee and spinal problems had rendered her disabled since March 18, 2004. A.R. 30. The Social Security Administration denied Sternberg benefits on April 12, 2006, and, after reconsideration, on October 13, 2006. A.R. 32, 38. A hearing was held on March 17, 2008, before ALJ Daniel Shellhamer. A.R. 827. On August 11, 2008, the ALJ issued a decision which held that Sternberg had not been disabled under the relevant sections of the Social Security Act between March 18, 2004, and December 31, 2005. A.R. 13. Sternberg's request for review was denied by the Social Security Appeals Council. A.R. 5. Sternberg sought review by the District Court. App. 25–27. On September 30, 2010, the District Court, in an opinion, affirmed the ALJ's decision. App. 1.

## II. **<u>FACTUAL BACKGROUND</u>**

Sternberg alleges that various knee and spinal problems have rendered her disabled since March 18, 2004.

Sternberg first sought medical help for her knees during or prior to 1998. A.R. 891. On September 28, 1999, Dr. Robert Grossman performed arthroscopic surgery on Sternberg's left knee. On December 3, 1999, Dr. Grossman performed a similar surgery on Sternberg's right knee. A.R. 546–49. Dr. Vincent DiStefano treated Sternberg post-

2

operatively. During a visit on September 18, 2001, Sternberg told Dr. DiStefano that an unloader brace had "significantly helped" her left knee. A.R. 550–58.

Records from another treating physician, Dr. Mark Seckler, indicate that Sternberg did not show significant improvement from November 13, 2001, to April 2, 2002. Dr. Seckler indicated that Sternberg had degenerative changes, patellofemoral syndrome bilaterally, and medial hemi-joint changes. Sternberg received five Hyalgan injections in each knee between January and April 2002. A.R. 559–69.

On April 22, 2004, Dr. Seckler noted that Sternberg's knee problems were "minimal, almost resolved." A.R. 194. On April 26, 2004, an MRI of Sternberg's left knee was suggestive of a recurrent tear of the medial meniscus. A.R. 386–87. At another visit on May 4, 2004, Dr. Seckler noted that Sternberg was "very histrionical" and that "[h]er complaints [were] grossly disproportionate to objective findings." A.R. 192–93.

On July 27, 2004, Sternberg visited Dr. Manuel Banzon complaining of left knee pain. Dr. Banzon diagnosed Sternberg with left medial compartment arthritis. Sternberg received three injections of Synvisc between August and September 2004. On October 12, 2004, Dr. Banzon performed arthroscopic surgery on Sternberg's left knee. When Sternberg was discharged from physical therapy in December 2004, records indicate she had "minimal complaints of pain and difficulty" and "exhibit[ed] a good prognosis." Dr. Banzon noted on January 7, 2005, that Sternberg was "doing very well." A.R. 219–23.

Sternberg saw Dr. Craig Israelite from August 17 to September 27, 2005. Dr. Israelite's impression was that of underlying degenerative joint disease of the left knee. A.R. 397–99. On March 9, 2006, Dr. Ronald Bagner examined Sternberg at the request

3

of the Social Security Administration. Dr. Bagner's impression was of degenerative arthritis of the left knee. A.R. 532–34.

Sternberg also alleges spinal pain. In July 2004, Dr. Michael O'Hara diagnosed Sternberg with cervical herniated nucleus pulposus, thoracic myofascitis and lumbar herniated nucleus pulposus. A.R. 19. In July 2004, Sternberg was treated with spinal manipulation under anesthesia. Dr. O'Hara noted that Sternberg's prognosis was "good" because of her "overall improvement in function and diminishing pain." A.R. 195–218.

Dr. Banzon's records from September 2, 2004, indicate Sternberg exhibited diminished range of motion in her lower back with spasm in the paralumbar area. Dr. Banzon noted on January 7, 2005, that Sternberg was "doing very well. She has responded to conservative treatment." A.R. 755–58.

In December 2004 and January 2005, Sternberg received lumbar epidural steroid injections. A.R. 510–12. On April 15, 2005, Sternberg underwent lumbar discography followed by a CT scan; the scan showed small disc herniation at L5-S1, disc herniation at L4-5, and annular tears on the right side at L3-4, L4-5 and L5-S1. A.R. 349, 351.

Sternberg saw Dr. Bruce Rosenblum on June 14, 2005. Dr. Rosenblum's impression was that Sternberg had clinical lumbar-sacral radiculopathy. After viewing an MRI of Sternberg's spine, Dr. Rosenblem reported that he was "not clear where her pain [was] coming from." A.R. 376–77. On July 13, 2005, Dr. Paul Marcotte reported that Sternberg had a negative leg raising test. A.R. 400–01.

During an examination on March 9, 2006, Dr. Bagner reported that: "[Sternberg] ambulates without difficulty. Gets on and off the examining table without difficulty. . . .

4

Does not use a cane or crutches. Can heel and toe walk." Dr. Bagner's impression was of cervical sprain/strain and lumbosacral strain. A.R. 532–33. On April 10, 2006, Dr. Eden Atienza, a state agency medical consultant, assessed Sternberg's functional capabilities. Dr. Atienza concluded that Sternberg was capable of light work, including lifting 10 pounds frequently, and sitting and standing for up to 6 hours in an 8-hour work day. A.R. 183–90.

## III.    THE ALJ's DECISION

On August 11, 2008, the ALJ denied Sternberg's claim for disability benefits. A.R. 28. In so doing, the ALJ followed the five-step sequential analysis required under 20 C.F.R. § 404.1520. Step one of the analysis calls on the ALJ to consider whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is so engaged, then the claimant is not disabled, and the inquiry ends. Here, the ALJ found that Sternberg passed step one because she had not engaged in substantial gainful activity since 2000. A.R. 14.

At step two, the ALJ considers whether the claimant suffers from a severe medical impairment. 20 C.F.R. § 404.1520(c). If not, then the claimant is not disabled, and the inquiry ends. Here, the ALJ concluded that Sternberg had several severe impairments through the date last insured: bilateral knee osteoarthritis, lumbar and cervical degenerative disc disease with radiculopathy, pelvic pain/dislocation, right arm weakness/pain, and rheumatoid arthritis. A.R. 15.

Step three of the analysis requires the ALJ to consider whether the impairment is equivalent to or exceeds those impairments listed in 20 C.F.R. Part 404, Subpart P,

5

Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the claimant is automatically considered disabled, and the inquiry ends. If not, the inquiry moves on to step four. Here, after comparing Sternberg's ailments to those listed, the ALJ concluded that Sternberg's impairments did not meet or medically exceed any of the listed impairments. A.R. 16. Thus, the ALJ moved to step four of the analysis.

Step four focuses on whether the claimant's residual functional capacity ("RFC") sufficiently permits her to perform her past relevant work. 20 C.F.R. § 404.1520(e)–(f). This first requires the ALJ to determine the claimant's RFC, which is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s). *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001). If, after determining the claimant's RFC, the claimant is found capable of returning to her previous line of work, then she is not "disabled" and not entitled to disability benefits. 20 C.F.R. § 404.1520(e)–(f). Here, the ALJ concluded that Sternberg had the RFC to perform a full range of sedentary work as defined in 20 C.F.R. § 404.157(a).[1] Specifically, the ALJ found that Sternberg had relatively minor postural limitations that restricted her to only occasional balancing, stooping, kneeling, crouching, and climbing of stairs and ramps, and precluded her from crawling and climbing on ladders and scaffolds. A.R. 17. However, the ALJ found that Sternberg was unable to perform her

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

past relevant work because it was determined that she had performed it at the medium exertional level. A.R. 26. The analysis thus moved on to the fifth and final step.

At step five, the ALJ considers whether there is sufficient work available in the national economy based on the claimant's residual functional capacity, age, and education. 20 C.F.R. § 404.1520(g). If there is sufficient work available, the claimant is not disabled. Here, the ALJ found that jobs did exist in significant numbers in the national economy that Sternberg could have performed. A.R. 27. Sternberg was therefore not disabled, as defined by the Social Security Act,[2] on or prior to her last date insured, December 31, 2005.

## IV.  **DISCUSSION**[3]

Our review of the District Court's order affirming the ALJ's denial of benefits is plenary. *Allen v. Barnhart*, 417 F.3d 396, 398 (3d Cir. 2005). However, "our review of the ALJ's decision is more deferential as we determine whether there is substantial evidence to support the decision of the Commissioner." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389,

---

[2] The Social Security Act requires the claimant to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" in order to be eligible for disability benefits. 42 U.S.C. § 423(d)(1)(A).

[3] The District Court had jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). We have jurisdiction pursuant to 28 U.S.C. § 1291.

7

401 (1971)). Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The court looks at the whole record in making such a determination. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

To show that the ALJ's finding was not supported by substantial evidence, Sternberg makes two main arguments on appeal: (1) that the ALJ improperly evaluated the medical evidence; and (2) that the ALJ erred in finding that Sternberg retained the RFC to perform the full range of sedentary work.[4] We disagree.

## A. The ALJ Properly Evaluated the Medical Evidence

Sternberg argues that the ALJ committed several errors in evaluating the medical evidence, including that he: (1) discounted, ignored, or misinterpreted compelling medical evidence and instead relied on his own medical opinion; (2) failed to give proper credence to Sternberg's subjective complaints of pain; (3) failed to give sufficient weight to Sternberg's treating physician; and (4) reached contradictory findings in his decision. We reject each of these arguments because the ALJ's decision is supported by substantial evidence.

---

[4] Sternberg's brief states that the District Court improperly evaluated the medical evidence and erred in finding that Sternberg could perform the full range of sedentary work. This mischaracterizes the nature of our review. As stated above, like the District Court, we independently review the ALJ's decision. Despite this imprecision, Sternberg's brief, in its substantive arguments, makes specific attacks on the ALJ's decision.

8

**1.** ***The ALJ Did Not Improperly Ignore Medical Reports but Reached a***

***Decision Supported by Substantial Objective Medical Evidence***

Sternberg argues that the ALJ ignored or discounted compelling objective medical evidence and instead relied on his own interpretation of the evidence and isolated statements from doctors' notes. In determining whether a claimant is entitled to disability insurance benefits, we have held that "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty . . . ." *Benton v. Bowen*, 820 F.2d 85, 89 (3d Cir. 1987) (quoting *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)) (internal quotation marks omitted). Thus, "[w]here the [ALJ] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Id*. at 88.

In arguing that the ALJ disregarded important findings, Sternberg cites the results of several medical examinations from 2004 and 2005.[5] However, the ALJ's decision thoroughly recounts Sternberg's medical treatment, including the findings that Sternberg claims the ALJ disregarded.[6] The ALJ did not ignore this evidence—he explicitly addressed it in his decision.

---

[5] The cited objective evidence includes: positive straight leg testing in 2004 and 2005, Appellant's Br. 28; findings of neck and lower back problems in 2004 and 2005, *id*. at 28; and MRIs and X-rays of Sternberg's spine taken in 2004, *id*. at 29.

[6] These findings recited by the ALJ include positive straight leg testing, A.R. 20, 22; findings of neck and back pain, A.R. 18–26; and the MRI and X-ray reports on Sternberg's spine, A.R. 18, 21.

Sternberg further alleges that the ALJ "relied heavily on his own interpretation of the medical evidence and isolated statements in the various doctors' notes." Sternberg cites treatment records of Dr. Israelite from July to September 2005, which state the possibility that Sternberg could need a knee replacement sometime in the future. Sternberg claims that the ALJ misinterpreted this evidence in his decision and should not have used it to support his conclusion denying benefits because, "Dr. Israelite was not saying that [her] knee was not bad enough for replacement, [but] was merely wanting to put off the inevitable . . . ." However, Dr. Israelite's report states that a knee replacement may be needed "down the road" if Sternberg's symptoms "become disabling at a much later date." A.R. 397. Dr. Israelite then strongly recommended conservative treatment. This piece of evidence—a finding in September 2005 that Sternberg's knee condition was not considered "disabling"—can fairly be read to weigh against Sternberg's claim of disability. While Sternberg may disagree with the ALJ's ultimate conclusion, the ALJ did not ignore or wrongly interpret evidence, but comprehensively considered the record and balanced all the evidence before him.[7]

The result of this balancing—the ALJ's conclusion denying disability benefits—is also well supported by the record, despite Sternberg's contention that "no objective medical findings" support it.

In regard to evidence concerning Sternberg's knees, in April 2004, near the alleged onset date, Dr. Seckler reported that Sternberg's knee problems were "minimal,

---

[7] When making a disability determination, the Commissioner will weigh "all of the evidence" if any of the evidence is inconsistent. 20 C.F.R. § 404.1527(c)(2).

10

[and] almost resolved" after a course of conservative treatment.  A.R. 194.  In June 2004, Dr. Seckler explained to Sternberg that "orthopedically she is fine."  A.R. 192.  A July 2004 EMG of the left leg was normal.  A.R. 357–58.  After left knee arthroscopic surgery in October 2004, the record demonstrates that Sternberg had "minimal complaints of pain and difficulty" as of December 2004 and was "doing very well" as of January 2005 after a course of conservative treatment.  A.R. 223, 219.  Numerous doctors' reports throughout 2005 continued to show that Sternberg was responding well to conservative treatment and physical therapy.  In March 2006, shortly after the expiration of Sternberg's insured status, Sternberg underwent a physical examination by Dr. Bagner in which she got on and off the examination table, dressed without difficulty, and was able to walk and stand without a cane or crutches.  A.R. 533.

In regard to Sternberg's back and neck pain, Sternberg references an April 2004 MRI of her lumbar spine finding a disc herniation.  However, this herniation was described by her physician as "very subtle," and another MRI in June 2005 showed it was no longer evident.  A.R. 382–83.  In May 2005, an EMG of the lumbar spine was essentially normal.  A.R. 352–56.  In July 2005, Dr. Marcotte, a neurosurgeon, observed that Sternberg had a normal gait and saw no indication for lumbar surgery.  A.R. 400–01.

Such evidence constitutes "more than a mere scintilla" in support of the ALJ's determination and enough for a reasonable mind to conclude as the ALJ did here. *Ventura*, 55 F.3d at 901.  Consequently, there is substantial objective medical evidence in the record to support the ALJ's conclusion denying disability.

11

## 2. *The ALJ Gave Proper Credence to Sternberg's Subjective Complaints of Pain*

The ALJ determined that Sternberg's statements regarding "the intensity, persistence and limiting effects of her symptoms [were] not entirely credible" because they were not consistent with the objective medical evidence. A.R. 26. Sternberg argues that the ALJ erred in this determination and did not give her claims of subjective pain enough weight. Furthermore, Sternberg argues that the ALJ made "no valid findings" in rejecting her subjective testimony.

In evaluating a claimant's subjective complaints, this Court has held that "[i]n order for an ALJ to reject a claim of disabling pain, he must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

In his review of the record, the ALJ comprehensively recounted Sternberg's subjective complaints of pain and properly pointed to evidence in the record to support his conclusion that they were not entirely credible. The ALJ cited evidence that in June 2004, Dr. Seckler described Sternberg as "very histrionical," noted that her concerns and complaints were "grossly disproportionate to objective findings," and stated that her pain specialist agreed with this assessment. The ALJ also referred to several examinations regarding Sternberg's back pain in May and June 2005 that revealed essentially normal results, leading Dr. Rosenblum to state he was "not clear where her pain is coming from." The ALJ further recounted that Sternberg responded well to conservative treatment and physical therapy throughout 2004 and 2005. Finally, the ALJ cited that in March 2006,

12

shortly after Sternberg's last insured date, Dr. Bagner indicated that Sternberg was able to walk at a reasonable pace, and in April 2006, a state agency doctor found that the alleged severity of Sternberg's impairments were not fully consistent with the objective evidence. A.R. 18–23.

Thus, the ALJ considered Sternberg's testimony, weighed it against various conflicting evidence in the record, and specified his reasons for finding her subjective complaints of pain not entirely credible. Consequently, there is substantial evidence to support the ALJ's conclusion regarding Sternberg's subjective complaints.

Relatedly, Sternberg claims that the ALJ failed to consider her medication as support for her allegations of pain. However, the ALJ specifically discussed the medications Sternberg received. A.R. 19–22, 24–26. Furthermore, the decision does not rely on a finding that Sternberg received only "conservative treatment," as Sternberg also claims. The decision considers Sternberg's surgeries, injections, knee braces, chiropractic treatment, physical therapy, and psychological consultations, in addition to her medications. The ALJ did not disregard the fact that Sternberg took various medications, or ignore her broader course of treatment, in determining that her subjective complaints of pain were not entirely credible.

**3.** ***The ALJ Gave Sufficient Weight to the Opinion of Sternberg's Treating Physician***

Sternberg argues that the ALJ failed to give sufficient weight to the opinion of one of her treating physicians, Dr. O'Hara. Sternberg specifically points to the fact that Dr. O'Hara, who has treated Sternberg for her back, leg, neck and arm pain since April 2004,

13

wrote in April 2008 that Sternberg "should be considered unemployable/disabled" due to her condition. A.R. 861. In his decision, however, the ALJ assigned "little or no weight to the opinion of this treating physician" because it was "simply not supported by the preponderance of the evidence." A.R. 24.

As Sternberg correctly notes, this Court has held that "[t]reating physicians' reports should be accorded great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation and internal quotation marks omitted). However, an ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence and "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Id*. Also, in the case of a treating physician's opinion regarding a claimant's ability to work, as Dr. O'Hara gave here, Social Security regulations state:

> We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

20 C.F.R. § 404.1527(e)(1). Thus, an ALJ does not give any "special significance" to a source who gives his opinion regarding a claimant's ability to work. 20 C.F.R. § 404.1527(e)(3).

14

Here, the ALJ did not act improperly in affording Dr. O'Hara's opinion "little or no weight." There was medical evidence in the record—the objective medical evidence cited above—that contradicted Dr. O'Hara's opinion. Furthermore, his opinion that Sternberg was "unemployable/disabled" was not entitled to any special significance, as it is a determination explicitly left to the ALJ. The ALJ's treatment of Dr. O'Hara's opinion was consistent with the regulations and our prior decisions, and it was supported by substantial evidence.

### 4. *The ALJ's Findings Are Not Contradictory*

Sternberg also argues that the ALJ's findings were contradictory because his decision states that Sternberg's impairments caused "significant" limitations on her ability to perform basic work activities, but later refers to her limitations as "slight" or "minor." There is no contradiction in the ALJ's statements. In describing Sternberg's limitations as significant, the ALJ was referring to his finding of Sternberg's severe impairments. By definition, severe impairments cause significant limitations in carrying out the physical activities that "most jobs" require, activities such as lifting, pushing, and pulling as described by 20 C.F.R. § 404.1521.[8] In later describing Sternberg's limitations as "slight" or "minor," the ALJ was referring to Sternberg's limitations for purposes of

---

[8] In relevant part, 20 C.F.R. § 404.1521 states: "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities. . . . When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include . . . [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . ."

performing sedentary work, or in other words, her postural, non-exertional limitations. It is not contradictory to state that an individual's physical limitations are "significant" in relation to the physical demands of most jobs, but are only "minor" in relation to sedentary jobs. We therefore reject Sternberg's argument and uphold the ALJ's findings.

## B. The ALJ's Determination of Sternberg's RFC Is Supported by Substantial Evidence

Sternberg also challenges the ALJ's finding that Sternberg retained the RFC to perform the full range of sedentary work. For the following reasons, we conclude that the ALJ's finding was supported by substantial evidence.

Sternberg argues that the ALJ's RFC determination was conclusory and unsupported by medical evidence. Specifically, she argues that the ALJ did not consider all the relevant evidence when making the RFC determination. To support this argument, Sternberg cites Social Security Ruling 96-8p, which states that an ALJ must consider "all of the relevant evidence" when determining a claimant's RFC. Moreover, the RFC determination should be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Fargnoli*, 247 F.3d at 41 (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).

As discussed above, the ALJ's determination was supported by medical evidence, which was cited throughout his opinion. The ALJ gave a thorough recitation of Sternberg's medical history, including the doctors she saw, the diagnoses they gave, and the treatments they prescribed. The ALJ's opinion also makes clear how much weight he assigned to each doctor's assessment. Far from being conclusory, the ALJ cited the

16

opinions and observations of numerous medical professionals to reach his determination, including Dr. Seckler, Dr. Bagner, and Dr. Atienza. A.R. 18–26.

Accordingly, the ALJ's determination of Sternberg's RFC is supported by substantial evidence. In addition, we have reviewed Sternberg's other arguments and find them unpersuasive.

## V. CONCLUSION

For the preceding reasons, we affirm the decision of the District Court in its determination that the ALJ's finding was supported by substantial evidence.