**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2150
_____

ALEXANDER MARTIN,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2-11-cv-02879)
District Judge:  Honorable Susan D. Wigenton

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 22, 2013

_____

Before:  AMBRO, SMITH, and CHAGARES, Circuit Judges

(Filed: December 12, 2013)

_____

OPINION
_____

CHAGARES, Circuit Judge

Alexander Martin appeals from a District Court order affirming the denial of Disability Insurance Benefits under the Social Security Act by the Commissioner of Social Security (the "Commissioner"). We will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts. On April 11, 2003, Martin filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act, alleging that he was disabled beginning January 15, 2001 due to depression. Martin's application was denied initially and on reconsideration. Martin then requested a hearing before an administrative law judge ("ALJ"). The hearing was conducted on January 25, 2005. The ALJ denied Martin's application in a decision issued June 23, 2005, and the Appeals Council denied review.

Martin filed a complaint challenging the ALJ's decision. On December 17, 2007, the District Court held that the ALJ erred by failing to explain why it had discredited Martin's testimony about his continued limitations or to develop sufficiently the record to determine whether Martin's past warehouse work was relevant. Therefore, the court remanded the case for further administrative action. The Appeals Council, in turn, vacated the June 23, 2005 ALJ decision and remanded for a new hearing. The hearing was conducted on March 16, 2010, and, on March 22, 2010, the ALJ issued a decision in which it again concluded that Martin was not disabled. As in its initial decision, the ALJ found that Martin was disabled from January 15, 2001 to April 30, 2004, but that his heroin addiction materially contributed to the disability. The ALJ further found that

2

Martin was not disabled from May 1, 2004 through his date last insured because, in the absence of substance abuse, he retained the residual functional capacity ("RFC") to perform jobs learnable in one month or less that require only occasional contact with other individuals, which — according to the vocational expert ("VE") — included the positions of assembler, sewing machine operator, and cleaner or housekeeper. The ALJ concluded that Martin "has not been disabled under the Social Security Act at any [relevant] time." Transcript ("Tr.")[1] 587. The Appeals Council denied review, making the ALJ's March 22, 2010 decision the final decision of the Commissioner. On May 19, 2011, Martin appealed to the District Court, which, by order entered February 20, 2013, affirmed. Martin timely appealed.

## II.

The District Court had subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). We have jurisdiction to review the District Court's decision under 28 U.S.C. § 1291. Our review is limited to determining whether substantial evidence supports the ALJ's finding that Martin was not disabled. 42 U.S.C. §§ 405(g), 1383(c); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). "'Substantial evidence' has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

## III.

## A.

[1] "Transcript" refers to the record of administrative proceedings in this case.

3

The Social Security Act authorizes the Commissioner to pay social security benefits to disabled persons. 42 U.S.C. §§ 423(d), 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). An individual is not disabled unless his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The Commissioner applies a five-step test to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The first two steps require the claimant to demonstrate that he is not currently engaging in substantial gainful activity, and that he is suffering from a severe impairment. Id. §§ 404.1520(a)(4)(i)-(ii). If the claimant progresses to step three, then the question becomes "whether the impairment is equivalent to one of a number of Listed Impairments [in 20 C.F.R. pt. 404, subpt. P, app. 1] that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." Knepp v. Apfel, 204 F.3d 78, 84 (3d Cir. 2000) (quotation marks omitted); see also 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's specific impairment is not a Listed Impairment, the ALJ must consider whether the claimant's impairment or combination of impairments is "medically equivalent" to a Listed Impairment. See 20 C.F.R. § 404.1526(a). An impairment or combination of impairments is "medically equivalent" to

4

a Listed Impairment if it is "at least equal in severity and duration to the criteria of any [L]isted [I]mpairment." Id. A claimant who satisfies step three "is conclusively presumed to be disabled." Knepp, 204 F.3d at 84 (quotation marks omitted). A claimant who fails at step three must continue to steps four and five.

At step four, the question is "whether the claimant retains the [RFC] to perform h[is] past relevant work." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). It is the claimant's burden to establish an inability to return to his past relevant work. Id. If the claimant satisfies this burden, then the burden of production shifts to the Commissioner to show, at step five, that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with h[is] medical impairments, age, education, past work experience, and [RFC]." Id. This step requires the ALJ to "analyze the cumulative effect of all of the claimant's impairments" in determining whether he is capable of performing work and is not disabled. Id.; see 20 C.F.R. § 404.1520(g). At the fourth and fifth steps, the ALJ often seeks advisory testimony from a vocational expert. Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002). In addition, the ALJ will "generally" consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for jobs that exist in the national economy, to determine whether any jobs exist that the claimant can perform. Id.

If the ALJ finds that the claimant is disabled, but there is medical evidence that the claimant suffers from drug addiction or alcoholism, the ALJ must then determine whether the addiction or alcoholism "would . . . be a contributing factor material to the

5

Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The "key factor" is "whether we would still find [the claimant] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). In making this determination, the ALJ must evaluate which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol, and whether any of those limitations would be disabling. Id. § 404.1535(b)(2). If the ALJ determines that the remaining limitations would not be disabling, the ALJ must find that the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. Id. § 404.1535(b)(2)(i). If the ALJ determines that the remaining limitations are disabling, the ALJ must conclude that the claimant is "disabled independent of [his] drug addiction or alcoholism and . . . [his] drug addiction or alcoholism is not a contributing factor material to the determination of disability." Id. § 404.1535(b)(2)(ii).[2]

B.

On appeal, Martin argues that the ALJ's decision is not supported by substantial evidence. Martin argues specifically that the ALJ erred by finding that substance abuse was a material factor contributing to his disability from the alleged onset date to April 30, 2004, and by finding that, from May 1, 2004 to his date last insured, his RFC rendered

---

[2] This Court has not yet determined which party bears the burden of proof as to the materiality determination under 42 U.S.C. § 423(d)(2)(C). However, other Courts of Appeals have concluded that the burden rests with the claimant. Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007); Doughty v. Apfel, 245 F.3d 1274, 1280 (11th Cir. 2001); Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir. 2000); Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999); accord SSR 13-2p. We need not reach the issue here because, even assuming that the burden is the Commissioner's, it has been carried in this case.

him capable of performing other work in the national economy. We agree with the District Court that neither argument has merit.

1.

Martin challenges the ALJ's finding that substance abuse materially contributed to his disability on the grounds that the ALJ: (1) ignored medical evidence that Martin suffered the "same level of mental symptoms" before and after he was addicted to heroin, (2) did not adequately explain why it discredited Martin's testimony on that issue, and (3) failed to indicate what particular physical and mental limitations would remain in the absence of his drug addiction. Martin Br. 12-22.

The ALJ relied on the following evidence in concluding that Martin's substance abuse materially contributed to his disability. Martin began using opiates in approximately 1992. On February 14, 2003, Martin was admitted — for the seventh time — to the Medical Center at Princeton with the chief complaint that he was feeling "more depressed" and using up to twenty bags of heroin per day. Tr. 159 (quotation marks omitted). Dr. Jose Vazquez diagnosed Martin with opiate dependence and opiate withdrawal, polysubstance abuse, peptic ulcer disease, and depressive disorder not otherwise specified. Dr. Philippe Khouri determined that Martin had a global assessment of functioning ("GAF") score of 40, which reflected major impairment in areas such as work, judgment, or thinking. Martin remained at the Medical Center until February 20 for detoxification. Fewer than three months later, he was readmitted with complaints of depression, suicidal thoughts, and opiate abuse. Dr. Wilson diagnosed Martin with dysthymic disorder (a form of depression), substance induced mood disorder, opiate

7

dependence, and acute opiate withdrawal. Additional examinations on December 29, 2003 (by Drs. Lisa Zhang and Joseph Lamanna) and February 13, 2004 (by Dr. M. Apacible) yielded diagnoses of, inter alia, major depressive disorder, heroin addiction, bipolar disorder, headaches, and heartburn, with "marked" difficulties in maintaining concentration, persistence, or pace. Tr. 213. Dr. Apacible opined that the "evidence in file" showed Martin to be under the influence of drugs "each time" he experienced increased depression and required hospitalization. Tr. 225. Dr. Apacible concluded that, while Martin "does have some psychiatric limitations," his drug abuse was "material to the case." Tr. 225.

Martin stopped using heroin in May 2004. Psychological medical expert Dr. William Gordon opined that Martin's mental state had "improved significantly" as a result of his abstinence. Tr. 287. Specifically, Dr. Gordon stated that Martin's depression had gone from "severe" to "moderate," and he found that Martin was only moderately restricted in his ability to interact with the public, supervisors, and co-workers or to respond to pressures and changes in an ordinary work setting. Tr. 287, 289. Dr. Gordon indicated that he had considered Martin's past mental status examinations in reaching this conclusion.

Citing the above evidence, the ALJ found that Martin's mental status "significant[ly] improve[d]" once he stopped using drugs, and it concluded that Martin's heroin addiction had materially contributed to his depression from the disability's onset date through April 30, 2004. Tr. 591 (citing 20 C.F.R. § 404.1535).

a.

Martin first argues that the ALJ ignored certain medical evidence, namely, December 29, 2003 progress notes issued by the University of Medicine and Dentistry of New Jersey ("UMDNJ"); February 2003 and February 2004 reports by State disability consultants Drs. C. Slavik and Nanjit Mitra; and the results of a September 25, 2009 psychological examination conducted by Dr. Edward J. Linehan. According to Martin, the above evidence "documents" that he suffered from the same mental problems before and after his period of drug use.

"Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty." Benton v. Bowen, 820 F.2d 85, 89 (3d Cir. 1987) (quotation marks omitted). Thus, "[w]here the [ALJ] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Id. at 88. In this case, the ALJ considered Dr. Apacible's February 13, 2004 report that Martin's drug abuse was material to his case, as well as Dr. Gordon's March 29, 2005 testimony that Martin's mental state improved significantly upon maintaining abstinence in May 2004. While the ALJ did not explicitly discuss the UMDNJ notes, or the reports by Drs. Slavik and Mitra, Martin does not explain that evidence's probative value to the central inquiry of "whether we would still find [Martin] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). Certainly, none of the medical evidence cited by Martin contradicts the

9

ALJ's materiality finding. For instance, the UMDNJ notes reflect that Martin tested positive for opiates. Tr. 246.[3]

b.

Martin next argues that the ALJ did not adequately explain why it discredited his testimony that, even after he abstained from drug use, he continued to suffer from severe mental problems. For instance, at the January 25, 2005 hearing, Martin testified that he still experienced memory loss and nervousness in crowds, that his medication made him drowsy and unfocused, and that he occasionally heard voices telling him to kill himself and his family.

While a claimant's subjective complaints must be given serious consideration, Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), they must also be supported by medical evidence, Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992). An ALJ may reject a claimant's subjective complaints when the ALJ "specif[ies] his reasons for rejecting the[] claims and support[s] his conclusion with medical evidence in the record." Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir.1990); see also SSR 96-7p ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."). Here, the ALJ found that

---

[3] The ALJ acknowledged, but deemed irrelevant, the results of the September 25, 2009 psychological examination. We agree with the Commissioner that the ALJ's decision to disregard the results of an examination conducted years after Martin's date last insured was not erroneous.

10

"the claimant's testimony regarding his depression is not credible because it does not comport with the weight of the evidence of the file." Tr. 594. In support of this finding, the ALJ specifically cited Dr. Gordon's responses to interrogatories, referenced above, as well as August 2, 2004 VA progress notes that Martin was only mildly depressed. While not expansive, the ALJ's comments are adequate to withstand our review.

c.

Martin's final argument is that the ALJ's decision is "deficient" because it did not indicate which of his physical or mental limitations would remain in the absence of drug addiction. The ALJ found that, prior to May 1, 2004, Martin suffered from major depressive disorder and heroin addiction — impairments which rendered him unable to perform the mental activities required by competitive, remunerative unskilled work. The ALJ also found that, if Martin stopped his substance abuse, he would have the RFC to perform work at all exertional levels but with some nonexertional limitations (such as limited contact with supervisors, co-workers, and the general public). The ALJ explained that, in so finding, it had considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. 593. Contrary to Martin's position, the ALJ's decision did not "ambiguously intertwine[]" the issue of Martin's depression with his substance abuse, Martin Br. 22: as discussed above, the ALJ plainly relied on medical evidence that, after Martin stopped abusing heroin, his mental condition improved significantly.

In summary, there is substantial medical evidence to support the ALJ's finding that Martin had a substance abuse disorder from January 15, 2001 to April 30, 2004, and

11

that the substance abuse was a contributing factor material to his disability during that period. We will therefore affirm this aspect of the decision.

2.

Martin also challenges the ALJ's determination that he was not disabled from May 1, 2004 to March 31, 2005, on the grounds that the ALJ: (1) miscalculated his RFC, (2) posed deficient hypotheticals to the vocational expert ("VE"), and (3) erroneously concluded that Martin was capable of performing the jobs of assembler, sewing machine operator, and housekeeper.

At the March 16, 2010 supplemental hearing, the ALJ solicited testimony from the VE through a series of hypothetical questions. In the first hypothetical, the ALJ asked the VE:

> Assume a hypothetical individual with the vocational profile of the claimant. Assume further that I find that he is limited to light work and that he is limited to jobs that take one month or less to learn and that require only occasional contact with supervisors, co-workers[,] or the general public. Could such an individual perform the claimant's past, relevant work?

Tr. 580. The VE responded, "[n]o, he couldn't." Tr. 580. The ALJ then asked the VE, "[i]s there any other work in the national economy that such an individual could perform?" Tr. 580. The VE answered that such an individual could perform the job of assembler (DOT 706.687-010), sewing machine operator (DOT 786.685-030), or housekeeper (DOT 323.687-014).

a.

Martin contends that there is "no evidence in the record from any treating, examining, or non-examining physician which supports the ALJ's [RFC]." Martin Br. 23. He specifically argues that the ALJ failed to reconcile the VE's testimony that Martin could perform light work with a State consultant's February 4, 2004 physical RFC assessment that he could perform medium work.

The term "RFC" addresses what a claimant can still do despite his limitations. § 404.1545(a)(1). We examine the ALJ's conclusions as to a claimant's RFC with "the deference required of the substantial evidence standard of review." Burns, 312 F.3d at 129. The ALJ, nonetheless, must have evaluated all relevant evidence, Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001), and explained its reasons for rejecting any such evidence, Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). The ALJ also must have given the claimant's subjective complaints "serious consideration," Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993), and made specific findings of fact, including credibility, Burnett, 220 F.3d at 120; see also Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

In this case, the ALJ found that, upon abstaining from drug use, Martin retained the RFC to perform work at all exertional levels but with two nonexertional limitations: "The claimant would be limited to jobs that take 1month [sic] or less to learn and that require only occasional contact with supervisors, co-workers, or the general public." Tr. 593. The ALJ based its conclusion about Martin's exertional limitations on Martin's 2010 testimony that, while he suffered from hip pain, the pain did not become significant until approximately one year earlier. With respect to Martin's nonexertional limitations,

13

the ALJ cited Dr. Gordon's 2005 responses to interrogatories, in which Dr. Gordon indicated that Martin was moderately restricted in his ability to understand and carry out instructions and in his ability to interact with others. Tr. 288-89. The ALJ concluded that Martin's mental impairments resulted only in "mild restrictions of the activities of daily living [and] in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation." Tr. 595.

While an ALJ must consider all relevant evidence when determining an individual's RFC, it need not "make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). We conclude that the ALJ thoroughly reviewed the voluminous medical evidence on record and issued a finding consistent therewith. We therefore agree with the District Court that the ALJ's evaluation of the medical evidence in arriving at the RFC assessment was supported by substantial evidence.

b.

After the ALJ properly calculated Martin's RFC, it considered the VE's testimony that Martin was capable of performing other jobs in the national economy. Martin argues that the VE's testimony was not substantial evidence because the ALJ's hypothetical questions to the VE "accorded no weight" to Martin's complaints of headaches, heartburn, memory loss, lack of social functioning, auditory hallucinations, depression, inability to handle stress, and medical history reports. Martin Br. 26.

"While the ALJ may proffer a variety of assumptions to the expert, the [VE's] testimony concerning a claimant's ability to perform alternative employment may only be

14

considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Burns, 312 F.3d at 123 (quotation marks omitted). A hypothetical question posed to a VE "must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). As an initial matter, Martin has not cited — and we have not found — any medical evidence to substantiate his claims of memory loss. With respect to Martin's complaints of auditory hallucinations, there is medical evidence that this impairment ceased when he stopped abusing drugs. See, e.g., Tr. 197. As for lack of social functioning, the ALJ's hypothetical incorporated this limitation because it assumed that Martin could not perform jobs that require more than occasional contact with other individuals. The ALJ considered, but discredited, Martin's testimony about his depression. Finally, although medical records confirm Martin's claims of headaches and heartburn, he has not explained how these limitations would impair his ability to perform the jobs identified by the VE.

We therefore conclude that the hypothetical posed to the VE adequately reflected all of Martin's impairments that had support in the record, as well as his age and education. Because the hypothetical was accurate, the VE's testimony provided substantial evidence for the ALJ's conclusion.

c.

Martin's final argument is that, given the ALJ's assessment of his RFC, the three jobs cited by the VE "fail to pass muster" because they exceed his mental capacity.

15

Martin Br. 26-27. In support of his argument, Martin cites his hearing testimony that he is "no good at that adding and subtracting," Tr. 567, as well as VA records that show him running out of his medication.

The jobs of assembler (DOT 706.687-010) and sewing machine operator (DOT 786.685-030) carry a general educational development ("GED")[4] reasoning level of two, which requires the individual to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and to] [d]eal with problems involving a few concrete variables in or from standardized situations." The job of cleaner/housekeeping requires a GED reasoning, mathematical, and language level of one, which includes the ability to subtract with two digit numbers, multiply, and divide. All three jobs carry a specific vocational preparation ("SVP")[5] level of two, which encompasses "[a]nything beyond short demonstration," up to and including one month.

As an initial matter, the three jobs cited by the VE are plainly consistent with the ALJ's RFC requirement that the job be learnable in one month or less. To the extent that Martin contends he is nevertheless incapable of performing the jobs due to his mental impairments, his evidence in support of that claim is not persuasive.

IV.

For the foregoing reasons, the order of the District Court will be affirmed.

---

[4] "GED" embraces those aspects of education that are required of the worker for satisfactory job performance.

[5] SVP refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility necessary for adequate performance in a specific job-worker situation.